Jack Rosenberg, J.
The defendant herein, who has been indicted in May, 1973 in an eight-count indictment for selling a dangerous drug, a barbiturate, to a police officer on two occasions in November, 1972, and for other lesser and included crimes in violation of various sections of article 220 of the Penal Law and section 3381 of the Public Health Law, moves to dismiss the indictment on the ground that it was brought by a court without jurisdiction of the offense, the Special Narcotics Courts of the Supreme Court of the State of New York sitting in the City of New York, County of New York.
The crimes with which the defendant is charged were, it is clear from this indictment, committed in a drugstore located in the County of Bronx, City of New York. The Grand Jury which brought the indictment is one drawn from and sitting in New York County, City of New York, and under the statute governing the trial of such offenses, article 5-B of the Judiciary Law (§§ 177-a-177-e), he will be tried in a Special Narcotics Part of the Supreme Court sitting in New York County before a petit jury drawn from New York County, not the county in which the crimes charged were allegedly committed, a procedure authorized by article 5-B of the Judiciary Law which provides that any narcotics indictment may be assigned to any Special Narcotics Part in any county of New York City regardless of the location of the crime charged and is to be deemed to be a trial in the county wherein the indictment was filed (Judiciary Law, § 177-b, subd. 3). This section and another section of that law (Judiciary Law, § 177-b, subd. 2) authorize the creation of both “ decentralized ” Special Narcotics Parts of the Supreme Court for handling narcotics crimes in each of the five counties in New York City and “ centralized ” parts in New York County with petit jurors drawn from that county only. Any narcotics indictment may be assigned to any Special Narcotics Part, regardless of the location of the crime charged, and the trial of such an indictment in a Special Narcotics Part is deemed to be a trial in the county in which the indictment was filed which may, of course, be different from the county in which the crime was committed. Similarly a Grand Jury impaneled for a Special Narcotics Part may indict for narcotics offenses in any county of the city (Judiciary Law, § 177-d, subd. [iii]). Thus, article 5-B of the Judiciary Law, written primarily to deal with the allied problems of narcotics crimes *73 and crimes involving or resulting from the narcotics sales or possession or use, does away with the former practice of treating each county of the State of New York as a separate judicial district for purposes of prosecution of crimes, substituting for that system a system of city-wide prosecutable and judicial operation both in terms of indictment and trials before juries.
The defendant herein attacks various aspects of the procedures described above on the basis that although the indictment states that the crimes with which he is charged were committed in Bronx County, he has been indicted by a New York County G-rand Jury and is to be tried in New York County before a petit jury drawn from that county. While the defendant claims a denial of the Equal Protection Clause of the Fourteenth Amendment, seeking to stretch its ban on exclusion of Negroes from grand or petit juries (see Strauder v. West Virginia, 100 U. S. 303; Virginia v. Rives, 100 U. S. 313; Matter of Virginia, 100 U. S. 339) and on the selection of grand and petit juries in an arbitrary and discriminatory manner (see Peters v. Kiff, 407 U. S. 493), to encompass the system established by article 5-B, we find no denial of rights under that provision. Both the grand and petit juries drawn under that article in no way involve the exclusion of specific social, economic, racial or ethnic classes from the juries chosen nor do they in any way adversely affect the right the Equal Protection Clause is intended to protect, in the circumstances of this case a fair trial by a jury of the defendant’s peers.
The defendant’s omnibus motion also attacks the statute on other grounds. It contends that article 5-B of the Judiciary Law which creates the Special Narcotics Parts of the Supreme Court in cities with a population of one million or more violates section 17 of article IH of the Constitution of the State of New York which prohibits the Legislature from passing a private or local bill providing for changes of venue in civil or criminal cases. He bases this argument on the fact that New York City is the only city in the State with a population of one million or more and therefore the broad class defined in the statute is in fact a class with a membership of one and the statute thereby becomes special legislation, “ a local law masquerading as general” .(Farrington v. Pinckney, 1 N Y 2d 74, 80-81; see, also, Stapleton v. Pinckney, 293 N. Y. 330; Matter of Henneberger, 155 N. Y. 420). But the fact that the class of cities to which the statute is presently applicable contains only one member in no way destroys the reasonable basis for the classification nor makes it into a local law. This court is therefore in full agreement with the conclusion reached by *74 Justice Myers in People v. Gornich (75 Misc 2d 169), rejecting this attack on article 5-B of the Judiciary Law as being wholly without merit.
The motion also attacks as invalid the provisions of the statute which authorize Grand Juries in New York County drawn in that county from residents thereof to indict for narcotics offenses in other counties.! It is true that at common law, every offense had to be inquired into in the county where it was committed (Matter of Murtagh v. Leibowitz, 303 N. Y. 311) but that rule may be changed by legislative enactment (Matter of Wood v. Hughes, 11 A D 2d 893, affd. 9 N Y 2d 144). In the case of Grand Juries, unlike petit juries, there is no constitutional requirement that the indicting Grand Jury be drawn from the district wherein the crime charged is alleged to have been committed. Bather the manner of selection of the indicting Grand Jury is left to be provided for by statute (CPL 190.20). Since the method and place of selection of Grand Juries is governed entirely by statute, the provisions of article 5-B of the Judiciary Law governing the districts where the Grand Jury may indict are clearly valid and within the power of the Legislature to enact even though they transcend county lines and under it, may indict for crimes in counties within the City of New York other than the county in which the Grand Jury sits and from which it was drawn. As to this branch of defendant’s attack, therefore, this court follows the view expressed by the court in People v. Cornick (75 Misc 2d 169, supra), and finds that the mode of procedure for Grand Jury presentment set forth in article 5-B (§ 177-d, subd. [iii]) of the Judiciary Law is a proper exercise of the legislative power and violates no provision of either our Federal or State Constitutions. (People v. Cornich, supra, p. 175.)
The main thrust of defendant’s attack on the indictment is that the Grand Jury which indicted him and the petit jury which will try him in New York County are “ illegally constituted.” And to establish this he relies on a claim of violation of the language in the Sixth Amendment to the Federal Constitution guaranteeing the right of a criminal defendant to trial “ by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law ’ ’. The question then is whether the Legislature, in altering the common-law practice followed generally, though not universally in this State (see Matter of Murtagh v. Leibowitz, 303 N. Y. 311, supra; CPL 20.40, subd. 4, par. [c]; Mack v. People, 82 N. Y. 235, 236-237, 238), in that every offense had to be inquired into, as well as tried, in the county wherq *75 the offense was committed (see People v. Hetenyi, 277 App. Div. 310, affd. 301 N. Y. 757), has violated the constitutional requirements of the Sixth Amendment made applicable to the States by the Fourteenth Amendment. (Duncan v. Louisiana, 391 U. S. 145, 149; Williams v. Florida, 399 U. S. 78.) In the latter case the Supreme Court of the United States determined that not all the features of the jury system as it existed at common law, were preserved in the Constitution by the Sixth Amendment, but only those which are indispensable components of the jury system in terms of the function and purposes of a jury trial. One such feature is, for example, “ a fair possibility for obtaining a representative cross-section of the community ” by preventing the arbitrary exclusion from jury service of the defendant’s own or any other class. In Williams, the Supreme Court also made clear that it was its view that another essential aspect of the jury trial preserved by the Sixth Amendment was the common-law right to be tried by a jury of the vicinage, a term the court explained (p. 93, n. 35) as meaning neighborhood, saying, ‘ ‘ ‘ vicinage of the jury ’ meant jury of the neighborhood or, in medieval England, jury of the county. ’ ’
But neither our own New York State Constitution in its provisions dealing with the right to jury trials (art. I, § 2; art. Ill, § 17), nor the Federal Constitution in the Sixth Amendment, uses the term “vicinage.” The Sixth Amendment speaks of the “ district ” wherein the crime was committed. In the Federal court system, the term “ district,” left to be defined by the Legislature, originally was defined as State-wide with only two exceptions (Judiciary Act of 1789; 1 U. S. Stat. 73, ch. 20) though an early Federal court decision held that a jury could constitutionally be drawn from a division within a judicial district adding, however, that those tried in such a division of this district could be tried only by jurors summoned from that part of the district. (United States v. Wan Lee, 44 F. 707.) Thus our problem becomes óne of defining and applying to the statutory provisions in question the term “ district ” or “ neighborhood ”.
One court which has had to deal with an aspect of this problem recently, the California Supreme Court in People v. Jones (9 Cal. 3d 546, -; 108 Cal. Rptr. 345, 351) has said: “ Thus, while the outer limits of the ‘ district ’ as used in the Sixth Amendment are flexible, encompassing greater or smaller areas as the Legislature deems wise, the mandate of the Sixth Amendment remains immutable. The district, however large or small, from which the jury is drawn must include the area wherein the crime was committed.” (Emphasis supplied.) *76 In People v. Jones {supra) the majority struck down as invalid under the Sixth and Fourteenth Amendments a Los Angeles County ordinance which, for the purpose of dealing with problems arising from a lack of sufficient Judges or courtrooms in one area of the county, ordered that all crimes committed in one specified precinct be tried in another district, a practice which resulted in the convicted defendant appellant being tried by a jury drawn from an area which excluded the precinct in which the crime with which he was charged had been committed. But that decision, relied on heavily by the defendant in the case here under consideration, is of no help to us if the “ district ” we are dealing with is the entire City of New York, a view which was clearly within the contemplation of the Legislature when it enacted article 5-B as shown by its finding stated in section 177-a of the Judiciary Law that the crisis in narcotics enforcement in New York City “ transcends the traditional jurisdictional boundaries of the counties wholly contained within such cities having a population of one million or more, demands coordinated prosecution, centralized direction and the infusion of massive new resources.” It is contended by the People that all of New York City could properly qualify as one district for purposes of the Sixth Amendment requirement of trial by an impartial jury of the district wherein the crime shall have been committed. In such case the only question that would arise would depend on whether the fact that under the existing procedure for selecting jury panels for the Special Narcotics Parts in New York County only residents of New York County are called, is viewed as a form of deliberate exclusion of all residents of other counties from inclusion in such panels or is viewed, instead, as an administrative device intended to make the selection of jury panels for such court parts simpler and to diminish inconvenience for those called. It is arguable that the composition of the population of New York County is not so different from that of the other four counties of New York City as to make it likely that a jury panel so drawn will be less likely to be a representative cross section of the New York City community than would a panel drawn from any of the other counties or from all five counties. It is arguable, also, that a panel so drawn would be no more likely to involve “ the arbitrary exclusion from jury service of the defendant’s own or any other class ” except the class of persons living in the other four counties who are, so far as racial, ethnic, economic and social factors are concerned, of essentially similar composition a§ the class of persons residing in New York County. Thq *77 People also contend that the legislative purpose in providing that county lines should be disregarded for purposes of dealing with the narcotic crime crisis in New York City was neither to impede the constitutional rights of defendants to an impartial jury nor to deny them trials by juries drawn from an impartial panel nor to deny them trials by juries drawn from the district wherein the crime was committed. The People note that it has not been shown that the effect of such trials would in any way prejudice the defendant. His witnesses would have to make no extended journey to testify at a trial in New York County instead of in Bronx County. His counsel would not be inconvenienced. His jury would be equally cross sectional and equally impartial.
As has been noted above, the word “ district ” in the Sixth Amendment was interpreted originally by the First Congress in the Judiciary Act of 1789 as meaning an entire State or a major portion of a State, thus departing from the original common-law standard of medieval England of the " neighborhood ” or county. But in our State the practice hitherto has been to read the “ vicinage ” or “ district ” requirement as meaning the county, an area which even then substantially exceeded what is now the common understanding of the limits of a neighborhood. And the fact is that New York City is composed of many neighborhoods which, though reflecting, when viewed as a whole, the vastly mixed and polyglot population of our city, consisting as it does of many different ethnic, language, racial, cultural and economic groups, also are unique and different, reflecting, as each does, vast differences in population composition. The patterns of housing segregation on economic, racial, ethnic and cultural lines, of tenement and apartment house concentrations, as contrasted with areas of one- and two-family homes, all demonstrate the differences between neighborhoods. This together with differences in the history of the growth and change in neighborhoods serves to bring home the differences not only between neighborhoods but also among the five counties which constitute the city. "While New York City could be declared by statute to be a single district for purposes of administration of the Special Narcotics Parts and for the drawing of Grand Juries in connection with the enforcement of the law creating those courts, its counties and its neighborhoods are by no means fungible. Richmond County and Queens County which retain some of their original rural areas and which were long populated primarily by home owners rather than apartment and tenement dwellers are substantially different from New York County and major portions of Bronx *78 and Kings Counties. There is a far greater concentration of the poor and of racial minorities in New York County, the southern portion of Bronx County and portions of Kings County than there is in Richmond and Queens Counties.
Juries drawn from the latter two counties will probably differ substantially in racial, ethnic and economic cross section than would juries drawn from the other three counties. Hence, if a petit jury drawn from the vicinage or from the district wherein the crime charged was committed is interpreted, as has been the practice prior to the enactment of article 5-B, as a jury from the county in which the crime was committed (see Matter of Murtagh v. Leibowits, 303 N. Y. 311, supra), the change is one which would have substantial effect on the composition of the jury before which the defendant herein is to be tried. That difference in composition might well affect the social, cultural and economic standards that the members of the petit jury before which the defendant would be tried, would bring to bear upon the task it would face of determining the innocence or guilt of the defendant. The difference in the jury’s composition might also affect how the jury would evaluate the testimony of the undercover police witnesses and of other witnesses for both sides. The location of the homes of the petit jury panel members in the county where the crime charged was committed or elsewhere in our large city would also affect the defendant’s ability to evaluate the petit jury panel for use of his challenges. These differences would seem to be important to the defendant.
It is no accident that the Supreme Court in Williams v. Florida (399 U. S. 78, supra) noted that .in medieval England the common-law right to trial by a jury from the vicinage was understood to be the right to trial by a jury drawn from the neighborhood or county. Such a jury might well include persons who would not only be familiar with the physical aspects of the area in which the crime charged is alleged to have occurred, enabling them better to evaluate the testimony of witnesses as to how the crime occurred but also better to evaluate the credibility of the witnesses.
Nor does the present pattern of seeking jurors without any prior knowledge of the parties or of the factual background of the area where the crime charged occurred make these factors wholly dispensable, as the People contend. Constitutional guarantees are not so lightly to be ignored. The constitutional right to trial by a jury from the vicinage in which the crime occurred is not a right lightly to be cast aside for reasons of administrative. convenience and to permit more intensive use *79 of available prosecutorial and trial facilities. The commands of our Federal Constitution must be obeyed. They may not be declared dead letters simply because they may sometimes worsen the task of law enforcement agencies.
The foregoing argument on both sides of the issue faces this court with a quandary. Because it is very much aware of the fact that article 5-B was enacted because the Legislature was moved by its recognition of the narcotics crime plague which bedevils our city and took the steps embodied in article 5-B as a means to deal with that plague, it is most reluctant to strike down any portion of that enactment. As a court of law, though of the trial level, it is bound by the applicable provisions of the Federal and State Constitutions. Lower courts, like appellate courts and all the other branches of government, must operate under those provisions. While they must observe the' presumption of constitutionality which attaches to any statute, they must also follow their view of the law as they find it in both the applicable constitutional provisions and the statutes. “ State courts [of all levels] are of course competent to adjudicate questions of constitutional rights.” (See N.A.A.G.P. v. Button, 371 U. S. 415, 427-428; Tang v. Appellate Division of Sup. Ct. of State of N. Y., N. Y. L. J., Oct. 30, 1973, p. 1, col. 7.)
This court finds, however, after careful consideration of the arguments pro and con above, that the Legislature’s action in declaring the City of New York a single district for purposes of indictments and trials of charges of violations under article 5-B is not in violation of the constitutional provisions of the Sixth Amendment governing trial by a jury in the district where the crime was committed. It does so with reluctance and expresses the hope that this holding will speedily be brought before the appropriate higher courts for a determination by such courts of the validity of this holding.
But that holding does not dispose completely of the issues raised as to the propriety under the Sixth Amendment of a trial of the defendant in a Special Narcotics Part in New York County of the charge against him that he violated Article 5-B in Bronx County. If he Is tried, as is proposed, it is clear that the petit jury which will sit in his case will be drawn solely from panel members residing in New York County. The effect of such a trial will be that the jury which will determine his guilt or innocence will, like the jury in People v. Jones (9 Cal. 3d 546; 108 Cal. Rptr. 345, supra) be drawn from a panel from which persons residing in the county or in which the crime charged is alleged to have occurred will have been excluded. Hence under *80 the interpretation of the Sixth Amendment jury provision made by the California Supreme Court in that decision, ruling such exclusion a fundamental defect in the trial, the defendant’s trial would be invalid. That highly respected court gives no reason why such a formal defect should have so drastic an impact. It may well be that when the common-law doctrine of a right to trial by a jury drawn from the vicinage developed and when the Sixth Amendment was adopted, the available means of travel and communication were such that a trial before a jury from distant places might have meant a trial before a jury unfamiliar with the locale where the crime was committed and with the community patterns of living, behavior and accepted morality a factor which could result in a strong adverse impact on the defendant’s right to an impartial and just trial. But such adverse effect to a defendant is hardly likely to result in these days of speedy travel between the various parts of the city, of means of communication which tend to homogenize the culture, background and moral standards of the city’s population, and where the interrelations of individuals residing in a neighborhood or local community in our city are not such as to make it likely that jurors will be familiar with the witnesses for both sides as their neighbors so as to more easily evaluate their credibility and so as to know their surroundings sufficiently well to be able to use that knowledge to check the testimony of witnesses concerning how the crime was committed, nevertheless such a change of circumstances cannot serve to justify this court in disregarding the peremptory requirement of the Sixth Amendment as to trial by a jury drawn from the district of the crime as interpreted by one of our highest State courts. The Constitution is not so lightly to be set aside nor are the requirements for amendment of that Constitution so easily to be evaded. The question here under consideration is a real and serious one. It is for that reason that this court has decided to take action which makes it unnecessary to decide it. Whenever possible a court should avoid dealing with a constitutional issue unnecessarily.
In order to avoid thus casting doubt on the constitutionality of such a trial, the court directs, as it has the power to do, that the trial of this case be held in Bronx County, with the petit jury therein being chosen from a panel drawn from residents of that county. This will serve to avoid any possibility that the trial herein will fail to conform to the requirements of the Sixth Amendment. This court is sorely troubled by the issue raised by the disregard of the Sixth Amendment requirement that a defendant be tried by a petit jury drawn from the district *81 wherein the crime charged was committed. But since a change of venue of the trial to Bronx County will result in such a trial, the constitutional question is thereby removed from the case.
Of course, other methods exist for avoiding the constitutional question. A jury panel drawn from Bronx County could be used by the Special Narcotics Part in New York County in connection with the trial of this defendant. Or, if time and statute and existing administrative machinery permitted, this defendant could be tried before a petit jury drawn from a panel selected at random from residents of all five counties of the city. But neither of these other alternatives need be invoked in this case if the venue of the trial is transferred to Bronx County since such a transfer will grant the defendant a trial before a jury drawn from the vicinage in which the crime charged was committed.
Having thus disposed of this issue, this court commends to the Legislature the wisdom of amending Article 5-B to provide that petit juries, to be used in trials in the “ centralized ” parts of the Special Narcotics Courts sitting in New York County, be drawn from panels, the members of which have been selected at random from the entire ' district ’ of New York City, from panels which include residents called from all the five counties comprising the city. Such an amendment will make unnecessary any repetition of the action taken by this court herein shifting the venue of the trial of this case to Bronx County where the crime charged is alleged to have been committed.
To make clear the fact that the issue of the constitutionality of the trials in “ centralized ” Special Narcotics Parts of persons charged with crimes committed in other counties, as well as its reluctance to in any way limit the effectiveness of article 5-B, this court must stress the fact that even a ruling against the constitutionality of the provisions of that article here in question would be limited solely to those specific portions of article 5-B which authorize disregard of county lines with respect to petit jury trials of narcotics indictments and to those trials only that involve the use of juries drawn from a county other than that in which the crime charged occurred, but also that it is limited to the instant case and has no retroactive effect whatsoever. The right to a jury from the vicinage in no way involves an aspect of the criminal trial that substantially impairs its truth-finding function. Violation of that right in no way raises serious questions about the accuracy of guilty verdicts in past trials. Only if it did so would such a violation of a constitutional right require that it be given retroactive effect. (See Ivan v. City of New York, 407 U. S. 203; see, also, Adams v. *82 Illinois, 405 U. S. 278; Lego v. Twomey, 404 U. S. 477; Michigan v. Payne, 412 U. S. 47.)
The motion to dismiss the indictment is denied as indicated. The motion to inspect the Grand Jury minutes is also denied. This court has read those minutes and on the basis of that reading finds no ground for directing that they be made available for the defendant’s inspection. The portion of defendant’s omnibus motion requesting a bill of particulars is denied. This court finds that the information provided to defendant by the People in response to Ms demand for such a bill is all that he would be entitled to under the law.
This court directs that the venue of the trial of the indictment involved in this proceeding be changed to Bronx County. Defendant’s omnibus motion is denied in all other respects.