Wachtler, J.
The defendant, indicted in Schoharie County, was tried and convicted in Warren County. He claims that under the State and Federal Constitutions he should have been tried by a jury of Schoharie County, where the crimes were allegedly committed. The case had been transferred upon application of the prosecutor. The primary question on this appeal concerns the constitutionality of CPL 230.20 (subd 2) which permits the Appellate Division to change venue upon application of the prosecutor when there is "reasonable cause to believe that a fair and impartial trial cannot be had in” the county where the indictment is pending.
The defendant is the former Sheriff of Schoharie County. In 1973, while still in office, he and two of his deputies were indicted for various offenses relating to the performance of their official duties. Basically the indictments, which together contained 38 counts, charged that the defendant misused his office by employing prisoners and on-duty prison personnel in constructing his personal residence on Bear Gulch Road; that he "caused” inmates to make election posters and signs for his campaign; and that he committed several acts of petty larceny and related offenses.
After the District Attorney disqualified himself, a Special Prosecutor was appointed and, as indicated, applied to the Appellate Division, Third Department, for a change of venue pursuant to CPL 230.20 (subd 2). The relevant portion of that statute states: "the appellate division of the department embracing the county in which the superior court is located may, upon motion of either the defendant or the people for a change of venue, demonstrating reasonable cause to believe *659 that a fair and impartial trial cannot be had in such county, order that the indictment and action be removed from such superior court to a designated superior court of or located in another county * * * If the order is issued upon motion of the people, the appellate division may impose such conditions as it deems equitable and appropriate to insure that the removal does not subject the defendant to an unreasonable burden in making his defense.”
In support of the application the Special Prosecutor submitted an affidavit in which he noted that the defendant was the Sheriff of a sparsely populated rural county; that the charges had generated a considerable amount of newspaper publicity; and that the defendant had not been suspended from office but would continue in his position throughout the trial. The prosecutor also stated that in addition to administering the jail, the Sheriffs office functioned as a law enforcement agency and emergency service throughout the county and assigned deputies to serve as court officers at local trials. All of this, he claimed, could have an inhibiting effect on the jurors and thus he asked that the trial be transferred "to a county other than Schoharie . . . because it is reasonable, under the facts and circumstances existing herein, to expect that a fair and impartial trial cannot be had in Schoharie county.” A change of venue of course would also affect the jury pool since, by statute, jurors must be drawn from the county where the trial is held (Judiciary Law, § 504, subd 1).
As indicated the motion was granted and the case was removed to Warren County where, after a jury trial defendant was convicted of 11 counts of official misconduct, a misdemeanor. He was sentenced to six months’ imprisonment on several counts, with the sentences to run concurrently.
On this appeal the defendant claims that he has a constitutional right, under the State (NY Const, art I, § 2) and Federal (US Const, 6th Arndt) Constitutions, to be tried by a jury of the county where the offense was committed, and therefore CPL 230.20 (subd 2) is unconstitutional.
At common law the accused had the right to be tried by a jury of the neighborhood or vicinage, which was interpreted to mean the county where the crime was committed (4 Blackstone’s Commentaries, p 344; Blume, The Place of Trial of Criminal Cases: Constitutional Vicinage and Venue, 43 Mich L Rev 59, 60; Matter of Murphy v Supreme Ct., 294 NY 440, 455). The rule apparently developed at a time when the jury *660 system .was in its infancy and it was expected that jurors would decide the case on the basis of their own personal knowledge of the parties and the facts of the case. As the jury concept evolved and the jury came to be viewed as an impartial body which decided the controversy on evidence submitted in open court, the vicinage concept declined, at least in the eyes of the Legislature. Thus from the sixteenth through the eighteenth centuries various statutes were enacted which provided that trials could be held at places other than the county where the crime was committed (Blume, op. cit., at pp 60-63). That was the status of the rule on the eve of the revolution (Mack v People, 82 NY 235).
The first Constitution for New York State provided that "trial by jury in all cases in which it hath been used in the Colony of New York shall be established and remain inviolable forever” (Matter of Murphy v Supreme Ct., supra, p 455). The Constitution now states: "Trial by jury in all cases in which it has heretofore been guaranteed by constitutional provision shall remain inviolate forever” (art I, § 2).
The first case to shed any light on the meaning of this provision as regards the place of trial is Mack v People (supra), decided in 1880. There a defendant who had allegedly stolen property in one county was arrested and tried in another. This was permitted by statute but the defendant claimed that the statute violated the constitutional right to be tried by Grand Jury indictment, which under common law meant a Grand Jury drawn from the county where the crime was committed. This court recognized that the provisions of the Bill of Rights should be read (p 237) "in the light of the law as it was when the bill of rights was adopted”, but held the statute constitutional. The court stated at page 237: "Then, though as a rule indictments could be preferred and tried only in the county where the offense was committed, there were exceptions to that rule of instances in which the legislature had directed otherwise. And the bill of rights must be taken to have recognized that legislative power”.
A case more directly in point is Matter of Murphy v Supreme Ct. (294 NY 440, supra). In that case trial of an indictment returned in Albany County, where the offenses were allegedly committed, was transferred to New York County upon application of the District Attorney. The statute then in effect, section 344 of the Code of Criminal Procedure, only permitted a change of venue upon application by the *661 defendant. After extensive analysis this court concluded that prior to the adoption of the State Constitution the prosecutor had no right to apply for a change of venue. "The Legislature can if it chooses confer upon the People the right in proper cases to apply for an order directing that an indictment be tried before a jury drawn from a county other than the county where the indictment was found” (Murphy, supra, p 459). However in the absence of such legislation the accused had the right to be tried in the county where the crime was committed. (See, also, Change of Venue by State in Criminal Case, Ann., 46 ALR3d 295.)
Several years later the Legislature amended section 344 to permit the prosecutor to apply for a change of venue "on the ground that a fair and impartial trial cannot be had in the county where the indictment is pending” (L 1953, ch 889). That section was the predecessor of CPL 230.20 (subd 2).
In sum CPL 230.20 (subd 2) does not violate section 2 of article I of the State Constitution. Prior to the adoption of the Constitution it was recognized that the Legislature could alter the accused’s common-law right to be tried by a jury of the county where the crime was committed, and the constitutional guarantee embodies "the law as it was when the bill of rights was adopted” (Mack v People, 82 NY 235, 237, supra; Matter of Murphy v Supreme Ct., supra).
The defendant’s second point is that the statute violates that portion of the Sixth Amendment to the Federal Constitution which guarantees to the accused the right to a trial by "an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law.” He urges that the word "district” means county, the traditional common-law vicinage.
The Supreme Court has recently observed that "there is absolutely no indication in 'the intent of the Framers’ of an explicit decision to equate constitution! and common-law characteristics of the jury” (Williams v Florida, 399 US 78, 99). The court was specifically referring to the 12-man jury requirement, but they illustrated their point by closely examining the concept of vicinage which, as incorporated in the Sixth Amendment, they noted, represents a modified version of the narrow common-law rule (Williams, supra, p 96).
The framers of the Federal Constitution were, of course, sensitive to the need for some kind of venue or vicinage requirement since one of the primary causes of the revolution *662 was, as stated in the Declaration of Independence, the British practice of "transporting us beyond Seas to be tried for pretended offenses.” Thus they included in the body of the Constitution the requirement that in criminal cases the "Trial shall be held in the State where the said Crimes shall have been committed” (art III, § 2). This fixed the venue but the clause was criticized for failing "to preserve the common-law right to be tried by a 'jury of the vicinage’ ” (Williams, supra, p 93). The omission apparently was intended to satisfy those members who objected to the traditional rule as being too restrictive. As James Madison observed during one of the debates on the article, "It might so happen that a trial would be impractical in the county. Suppose a rebellion in a whole district, would it not be impossible to get a jury?” (3 Farrand, Records of the Federal Convention 332 [1911]; see, also, Williams, supra, p 94, n 35.)
Later during the drafting of the Bill of Rights, it was proposed that one of the amendments guarantee the right to trial by a "jury of freeholders of the vicinage”, in the common-law sense (1 Annals of Cong 435). This was rejected and the Sixth Amendment as finally approved and passed represents a compromise or accommodation of the competing interests. (Williams, supra, pp 94-96.) Apparently it was intended to be restrictive enough to protect the individual from being tried by an alien body, and yet not so restrictive as to deny the Government a forum when "a trial would be impractical in the county.” Under this expanded vicinage rule the individual is guaranteed a trial "by an impartial jury of the State and district” where the crime was committed and the Legislature is given the power to define or designate the district.
In Federal prosecutions undoubtedly "district” means the Federal judicial districts established by Congress (see, e.g., Blume, The Place of Trial of Criminal Cases: Constitutional Vicinage and Venue, 43 Mich L Rev 59, 66; Williams, supra, p 96).
It is not entirely clear what this means in State prosecutions, or whether in fact it imposes any obligations on the State to create or designate subdivisions limiting venue and vicinage within the State. But it is clear enough that CPL 230.20 (subd 2) does not offend the Sixth Amendment simply because it permits the Appellate Division to transfer a criminal case for trial in a county other than the county of the *663 offense, when there is "reasonable cause to believe that a fair and impartial trial cannot be had in such county.”
Although there is no claim in this case that the Appellate Division abused its discretion either in determining that the trial should be transferred or in designating Warren County as the new situs, it is important to note that the statute is designed to insure a neutral forum. It should not be construed in such a way as to permit the prosecutor to choose, or hope to obtain a more favorable tribunal (cf. United States v Johnson, 323 US 273, 275; Travis v United States, 363 US 801). There must be some showing—at least a reasonable basis for belief— that the county in which the indictment is pending is not neutral between the parties because it is charged with an emotional atmosphere or some other factor which would preclude a fair and impartial trial and determination on the merits. The choice of the neutral forum is perhaps a more delicate task for the court must avoid turning the tables by choosing a county where the prosecution will acquire a new advantage. Thus within reasonable limits, the community to which the trial is transferred should reflect the character of the county where the crime was committed. In this case it is evident that these standards were met and, as indicated, there is no contention to the contrary.
The other arguments raised by the defendant have been considered and found to be without merit.
The order appealed from should be affirmed.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Fuchsberg and Cooke concur.
Order affirmed.