[No. S001133. Oct. 31, 1989.]

DANIEL HERNANDEZ, Petitioner, v.
THE MUNICIPAL COURT FOR THE LOS ANGELES JUDICIAL
DISTRICT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Wilbur F. Littlefield, Public Defender, Laurence M. Sarnoff, Deborah Christian and Albert J. Menaster, Deputy Public Defenders, for Petitioner.

Chase, Rotchford, Drukker & Bogust, John J. Geary, Jr., and Frederick L. Glasser for Respondent.

Ira Reiner, District Attorney, Harry B. Sondheim and George M. Palmer, Deputy District Attorneys, as Amici Curiae on behalf of Respondent.

James K. Hahn, City Attorney, William N. Sterling, Susan S. Dwyer and Greg Wolff, Deputy City Attorneys, for Real Party in Interest.

## OPINION

PANELLI, J.— ■ ■■ ■ ■ We granted review to determine whether the practice in the Municipal Court for the Los Angeles Judicial District (MCLAJD) of transferring criminal cases from the traffic court

building to a branch courthouse within the same municipal court district violates the provisions of the Sixth Amendment of the United States Constitution that a jury be drawn from the locality, or vicinage, of the crime.[1] Specifically, we must decide what constitutes the geographical boundaries of the vicinage for a case arising in the MCLAJD. As we shall explain, we conclude that in California the boundaries of the vicinage are coterminous with the boundaries of the county.

▪ Hernandez urges a restrictive definition of the vicinage as the geographical boundaries of the census tract where the alleged offense occurred. The People argue that *People* v. *Jones* (1973) 9 Cal.3d 546 [108 Cal.Rptr. 345, 510 P.2d 705] mandates a broader definition of vicinage that encompasses the entire judicial district where the crime took place.

We conclude that the MCLAJD practice of transferring cases from the traffic court building to a branch courthouse within the same district does not violate the Sixth Amendment vicinage right. However, our conclusion is not based on the definition of vicinage as the judicial district in which the crime was committed, as set forth in *Jones, supra,* 9 Cal.3d 546 and

---

[1] It is imperative at the outset to distinguish between the related but distinct concepts of venue, cross-section representation, and vicinage. Venue fixes the place of trial. It is determined, for federal prosecutions, by section 2 of article III of the United States Constitution ("in the State where the said Crimes shall have been committed") and by rule 18 (Fed. Rules Crim. Proc.) which guarantees a federal criminal defendant the right to be tried in the federal judicial district in which the crime occurred. In state prosecutions, Penal Code section 777 contains the basic rule of venue: the jurisdiction of every public offense is in any competent court within the "jurisdictional territory" of which it is committed. Thus, rules of venue apply to the county where they deal with felonies triable in the superior court and to the municipal judicial district where they deal with misdemeanors triable in the municipal or justice courts. (Pen. Code, § 691.)

Vicinage and cross-section representation are guaranteed by the Sixth and Fourteenth Amendments. Although sometimes erroneously used interchangeably, vicinage and cross-section representation are discrete principles of criminal jury trials. The right to cross-section representation is a demographic requirement, which assures a criminal defendant a trial by a jury selected without systematic or intentional exclusion of cognizable economic, social, religious, racial, political and geographical groups. (*Thiel* v. *Southern Pacific Co.* (1946) 328 U.S. 217, 220 [90 L.Ed. 1181, 1184-1185, 66 S.Ct. 984, 166 A.L.R. 1412]; *People* v. *Wheeler* (1978) 22 Cal.3d 258, 268 [148 Cal.Rptr. 890, 583 P.2d 748].) It is designed to protect the right to be tried by an impartial jury. (*Taylor* v. *Louisiana* (1975) 419 U.S. 522, 530 [42 L.Ed.2d 690, 698, 95 S.Ct. 692]; *People* v. *Trevino* (1985) 39 Cal.3d 667, 679 [217 Cal.Rptr. 652, 704 P.2d 719]; *Wheeler, supra,* at pp. 266-267.)

The vicinage right is a geographic requirement. It is the right of a criminal defendant to be tried by a jury drawn from the area in which the crime occurred. (*People* v. *Guzman* (1988) 45 Cal.3d 915, 935 [248 Cal.Rptr. 467, 755 P.2d 917].) It is unrelated to the ideal of impartiality (see Heller, The Sixth Amendment (1951) p. 95) and has nothing to do with the defendant's place of residence. Although the vicinage right is assertable by a defendant in a criminal trial, in the present day criminal justice system the vicinage requirement also protects the right of the offended community to pass judgment in criminal matters. (See *Guzman, supra,* at p. 936.)

proffered by the People. As we will demonstrate, nothing in the state or federal Constitutions supports the restrictive definition of vicinage prescribed by *Jones*—the judicial district in which the crime occurs. The *Jones* majority's narrow definition of the vicinage stands virtually alone among federal and other state decisions. Accordingly, following our reexamination of *Jones,* we hold that vicinage is defined as the *county* in which the crime was committed.

I.

## Facts and Procedural History

The underlying complaint charging Hernandez with drunk driving and driving without a license was filed in 1985 at the central traffic courthouse in the civic center area of downtown Los Angeles. The alleged offense occurred about eight miles south of that courthouse in the Watts area.

Hernandez pled not guilty. His trial was repeatedly continued. On May 19, 1986, the last day on which the case could be brought to trial before becoming subject to mandatory dismissal pursuant to the speedy trial provisions of Penal Code section 1382, subdivision (c), the case was sent for trial to division 134, the San Fernando branch courthouse of the MCLAJD.

After impanelment of the jury, the trial court heard argument on defendant's vicinage motion. Hernandez challenged the jury draw on the ground it violated his Sixth Amendment right to have jurors selected from the area where the crime was committed. He argued that the statutory provision which specified that a prospective juror could not be required to travel more than 20 miles from his or her residence effectively excluded from his trial all jurors residing in the census tract where the crime was committed.[2]

Hernandez called Juanita Blankenship, assistant director of the juror services division for Los Angeles County. Blankenship testified that there was a "low" to "almost a zero" probability that a juror from the civic center area, which is 25 miles from the San Fernando courthouse, would serve on a San Fernando jury, because the computer assignment of jurors took into

---

[2] At that time section 203 of the Code of Civil Procedure provided in relevant part: "In counties with more than one court location, the rules shall reasonably minimize the distance traveled by jurors. In addition, in the County of Los Angeles no juror shall be required to serve at a distance greater than 20 miles from his or her residence." Section 203 was repealed in 1988. (Stats. 1988, ch. 1245, § 1.) The Trial Jury Selection and Management Act, revising sections 190-236, contains no provision which requires or recommends minimizing the distance traveled by jurors in counties with more than one court location.

Hereafter all statutory references are to the Code of Civil Procedure unless otherwise indicated.

account the right of jurors under section 203 to refuse to serve more than 20 miles from their homes.[3]

Blankenship stated that the probability of drawing a prospective juror from the area surrounding the actual scene of the alleged crime is further reduced because the scene of the alleged crime is south of the civic center. An examination of impanelment lists for the San Fernando courthouse for a four-week period, including two weeks before defendant's scheduled trial and the two weeks after, indicated that, during that time, no persons had been summoned to San Fernando from the area where the alleged offenses occurred.

Blankenship testified that there is an area of overlap between the 20-mile radii used by the San Fernando court and that used by the civic center courts, but the overlapping area does not include the location of the alleged crimes.

The trial court denied the vicinage motion, stating that the vicinage provision of the Sixth Amendment is satisfied when jurors are selected within the judicial district in which the alleged crime was committed.[4]

Following the court's ruling, Hernandez filed a motion to continue the trial date. The court granted the motion and dismissed the jury. Hernandez sought a writ of mandate in the superior court. On summary denial in that

---

[3] The Code of Civil Procedure (§ 200; former § 203.3) provides that, in Los Angeles County, the municipal courts shall use the same jury pool as that summoned for use in the superior court. Jurors are assigned using a computer program known as the Bullseye System. Although an eligible juror may be assigned to virtually any court in the county, the program assigns the prospective juror to the court nearest the juror's residence. If that court does not require jurors, the juror is assigned to the next nearest courthouse in need of jurors. If that court is located over 20 miles from his residence, the juror was informed, under former section 203, that he had the right to be excused. (See *Williams* v. *Superior Court, post,* 736, at pp. 739-740 [263 Cal.Rptr. 503, 781 P.2d 537].)

[4] A *municipal court* judicial district is to be distinguished from a *superior court* judicial district. Los Angeles County Superior Court has been divided into judicial districts pursuant to guidelines set forth in Government Code sections 69640-69650. No such division has been made in the municipal court system. Article VI, section 5, subdivision (a) of the California Constitution and Government Code section 71040 proscribe the division of a city into more than one judicial district. Article VI, section 5, subdivision (a) provides in relevant part: "Each county shall be divided into municipal court and justice court districts as provided by statute, but a city may not be divided into more than one district. . . . [¶] There shall be a municipal court in each district of more than 40,000 residents . . . . [¶] The Legislature shall provide for the organization and prescribe the jurisdiction of municipal and justice courts." Government Code section 71040 provides in relevant part: "As public convenience requires, the board of supervisors shall divide the county into judicial districts . . . and may change district boundaries and create other districts. No city or city and county shall be divided so as to lie within more than one district." To date, the County of Los Angeles has been divided into 26 municipal court judicial districts.

court, Hernandez petitioned for writ of mandate in the Court of Appeal. (§ 904.) Concluding that the dismissal of the jury panel rendered the petition moot, the Court of Appeal dismissed the petition without prejudice. We granted review and transferred the case to the Court of Appeal with directions to issue an alternative writ.

After hearing, the Court of Appeal held that, because jurors from the area of the crime were effectively excluded from service on juries in San Fernando as a result of former section 203 and the jury selection process in Los Angeles County, the transfer of Hernandez's case to San Fernando for trial deprived him of his Sixth Amendment right to a jury drawn from a panel that includes jurors residing in the vicinage, defined by the Court of Appeal as the "scene or area of the crime for which defendant is to be tried."

## II.

### DISCUSSION

The People contend that Hernandez's vicinage right was not violated because his jury panel was summoned from within the judicial district encompassing the scene of the crime as mandated by *Jones, supra,* 9 Cal.3d 546.[5] We agree that Hernandez was not denied a jury of the vicinage. However, our conclusion is premised upon a definition of vicinage as encompassing the boundaries of Los Angeles County wherein Hernandez allegedly committed the charged offenses, rather than the boundaries of the judicial district surrounding the scene of the crime. In so holding, we overrule *Jones, supra,* to the extent it is inconsistent with our opinion in this case. As we explain, our decision finds support in the California and the federal Constitutions as well as in the historical development of the vicinage requirement. Furthermore, our conclusion is in accord with decisions of federal courts as well as courts of other states addressing the vicinage issue.

### A. *Historical Development of the Vicinage Requirement.*

The vicinage requirement is derived from English common law and American colonial history. Early English judicial practice required that juries be drawn from the neighborhood where the crime occurred, as jurors were expected to reach a determination based upon their personal knowl-

---

[5] Alternatively, the People argue that any violation of Hernandez's vicinage right is justified by the "compelling state interest" in permitting transfer of criminal cases in order to ensure defendant's right to a speedy trial. Although the People's argument may have merit, we do not find it necessary to reach the issue of justification, because we conclude Hernandez was not denied a jury of the vicinage.

edge of the facts. (See Heller, The Sixth Amendment, *supra,* p. 95.) Although English juries evolved into bodies to hear the evidence, and previous knowledge became a principal cause for rejecting jurors, jurors nevertheless continued to be drawn from the vicinity of the crime. (See Kershen, *Vicinage* (1976) 26 Okla.L.Rev. 803, 813 (hereafter *Vicinage*).)

The concept of trial by the jury of the vicinage was not brought to the American colonies in any absolute form. (*Zicarelli* v. *Gray* (3d Cir. 1976) 543 F.2d 466, 475.) The practice of drawing petit jurors from the vicinity of the crime was not uniform within the colonies. (See *Vicinage, supra,* 26 Okla.L.Rev. at p. 814.) However, the principle of trial by a jury of the vicinage gained vitality as a political argument of the American Revolution in response to Parliament's enactment of a series of laws permitting trial in England of crimes of treason committed in the colonies. (*Id.* at pp. 806-807, 814.) In *Williams* v. *Florida* (1970) 399 U.S. 78 [26 L.Ed.2d 446, 90 S.Ct. 1893], the high court reviewed the legislative history behind the passage of the Sixth Amendment. We quote at length from *Williams*: "[P]ending and after the adoption of the Constitution, fears were expressed that Article III's provision failed to preserve the common-law right to be tried by a 'jury of the vicinage.' That concern, as well as the concern to preserve the right to jury in civil as well as criminal cases, furnished part of the impetus for introducing amendments to the Constitution that ultimately resulted in the jury trial provisions of the Sixth and Seventh Amendments. As introduced by James Madison in the House, the Amendment relating to jury trial in criminal cases would have provided that: 'The trial of all crimes . . . shall be by an impartial jury of freeholders of the vicinage, with the requisite of unanimity for conviction, of the right of challenge, and other accustomed requisites . . . .' The Amendment passed the House in substantially this form, but after more than a week of debate in the Senate it returned to the House considerably altered . . . . As reported in a second letter by Madison on September 23, 1789, the Senate remained opposed to the vicinage requirement, partly because in its view the then-pending judiciary bill— which was debated at the same time as the Amendments—adequately preserved the common-law vicinage feature, making it unnecessary to freeze that requirement into the Constitution. 'The Senate,' wrote Madison: 'are . . . inflexible in opposing a definition of the *locality* of Juries. The vicinage they contend is either too vague or too strict a term; too vague if depending on limits to be fixed by the pleasure of the law, too strict if limited to the county . . . .' The version that finally emerged from the Committee was the version that ultimately became the Sixth Amendment . . . . Gone were the provisions spelling out such common-law features of the jury as 'unanimity,' or 'the accustomed requisites.' And the 'vicinage' requirement itself had been replaced by wording that reflected a compromise between broad and narrow definitions of that term, and that left Congress the power to

determine the actual size of the 'vicinage' by its creation of judicial districts." (*Id.* at pp. 93-96 [26 L.Ed.2d at pp. 456-458], fns. omitted.)

## B. *Constitutional Basis of the Vicinage Requirement.*

The California Constitution, although providing for the right to trial by jury, has never contained an express vicinage requirement.[6] The common law vicinage right to trial by jury selected from the vicinage or county is implied in the state Constitution. We so held in *People* v. *Powell* (1891) 87 Cal. 348 [25 P. 481], where the prosecutor in San Mateo County exercised a statutory right to change venue, over defendant's objection, to San Francisco County. We invalidated the statutory provision as violative of defendant's right under the state Constitution (former art. I, § 7) to be tried by a jury drawn from the "vicinage," which in Blackstone's Commentaries (book 4, p. 350), is interpreted as the *county* where the crime was committed. (87 Cal. at pp. 354-360.)

Hernandez, however, does not invoke the provisions of the California Constitution. Rather, he relies on the rights secured by the Sixth and Fourteenth Amendments of the federal Constitution. The vicinage right is guaranteed by the Sixth Amendment, which provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law. . . ." The Fourteenth Amendment guarantees a right to trial by jury in all criminal cases which, were they to be tried in a federal court, would come within the Sixth Amendment's guaranty. (*Duncan* v. *Louisiana* (1968) 391 U.S. 145, 149 [20 L.Ed.2d 491, 496, 88 S.Ct. 1444].) In *Williams* v. *Florida, supra,* 399 U.S. 78, the Supreme Court held that only essential features of the jury system were preserved in the Sixth Amendment and that the court must determine those features that are indispensable components of a jury under the Sixth Amendment by examining the "function that the particular feature performs and its relation to the purposes of the jury trial." (*Id.* at pp. 99-100 [26 L.Ed.2d at p. 460].) The right to be tried by a "jury of the vicinage," the Supreme Court held, was an essential feature of jury trial, preserved, though redefined, by the Sixth Amendment. (*Ibid.*) In addition, the high court defined "district," for Sixth Amendment purposes, as the federal judicial district. (*Id.* at p. 96 [26 L.Ed.2d at p. 458].)

---

[6] As originally adopted, the California Constitution provided: "The right of trial by jury shall be secured to all, and remain inviolate. . . ." (Former art. I, § 7, repealed in 1974.) The present California Constitution, article I, section 16, provides in relevant part: "Trial by jury is an inviolate right and shall be secured to all . . . ."

▪ Three years later, this court considered the vicinage requirement in the context of the Sixth and Fourteenth Amendments and recognized that the federal Constitution guarantees a criminal defendant in a state trial the right to be tried by a jury selected from residents of the vicinage. (*Jones, supra,* 9 Cal.3d 546, 556.)

Our holding today—that there is no violation of the vicinage requirement when a criminal defendant is tried in Los Angeles County by a jury drawn from Los Angeles County—is consistent with the historical development of the Sixth Amendment and subsequent decisions of the United States Supreme Court. The impetus for the vicinage requirement and the rationale for its inclusion within the Sixth Amendment do not support a more restrictive definition of vicinage. Jurors are no longer permitted, let alone required, to possess personal knowledge of the crime; our citizens are no longer threatened with transportation across the seas for criminal trials. Transformations in our government as well as in our society make clear that narrowly interpreting the vicinage requirement is no longer warranted.

## C. *The Jones Decision.*

Both Hernandez and the People rely upon *Jones, supra,* 9 Cal.3d 546, to support their disparate positions.

Hernandez claims that *Jones* demands that the jury draw include residents of the "location" of the crime. According to Hernandez, former section 203 effectively limited the draw of potential jurors to a 20-mile radius from the courthouse, thereby depriving him of the right under *Jones* to be tried by a jury of the vicinage. He correctly points out that, under the computer (Bullseye) system used in Los Angeles County, as described by Blankenship, it is highly unlikely that a juror residing more than 20 miles from the courthouse in which the trial takes place will be summoned for service and the record is clear that, in his case, no jurors were drawn from the census tract area where the charged offenses took place. Were we to adopt Hernandez's and the Court of Appeal's definition of the vicinage as the precise location of the crime, we would have to agree that the vicinage right was violated here.

On the other hand, the People contend that *Jones* merely requires that jurors be drawn from within the judicial district in which the crimes occurred. Because jurors were in fact drawn from the MCLAJD, they reason, the vicinage requirement of *Jones* is met.

In *People* v. *Jones, supra,* 9 Cal.3d 546, we were called upon to determine, inter alia, whether a criminal defendant in Los Angeles Superior Court was

denied the Sixth Amendment vicinage right when his case was transferred from the Central superior court district (Central District) to the Southwest superior court district (Southwest District). At that time, all jurors who sat on cases in the Southwest District were drawn from the geographic area of the Southwest District. Jones claimed his vicinage right was violated when he was tried by a jury that did not include residents of the Central District wherein the offenses were committed. A four-justice majority of the court agreed.

Following a declaration that a criminal defendant in a state criminal prosecution has a constitutional right to be tried by a jury drawn from the residents of the district in which the crime shall have been committed (*Jones, supra,* 9 Cal.3d at p. 551), the majority declared: "Although a jury drawn either from an entire county wherein the crime was committed or from that portion of a county wherein the crime was committed will satisfy the constitutional requirement of 'an impartial jury of the State and district wherein the crime shall have been committed' (U.S. Const., 6th Amend.) a jury drawn from only a portion of a county, exclusive of the place of the commission of the crime, will not satisfy the requirement." (*Jones, supra,* at p. 553.)

Although the issue of cross-section representation was not directly before it, the *Jones* majority recognized that "another essential feature of jury trial is that the jury consist of a representative cross-section of the community," and the majority noted the "serious difference" between the Black population of the Central District (31 percent) and the Southwest District (7 percent). The majority emphasized its holding on the *vicinage requirement*: ". . . [E]ven if the two judicial districts had contained an identical proportion of Negroes, defendant would still be entitled to a jury drawn from a panel including residents of the judicial district where the crime was committed." (*Jones, supra,* 9 Cal.3d at p. 555.)

In his dissent Justice Burke emphasized that the term "district," as used in the Sixth Amendment, refers to the federal judicial districts created by the Judiciary Act of 1789, not to the subdivisions of a single county. (*Jones, supra,* at p. 559.) The dissent also noted that the majority's treatment of impartiality appeared to be based upon "a synergistic combination of [vicinage and cross-section representation] principles, and an interchangeable use of the terms 'district' and 'community.'" (*Jones, supra,* 9 Cal.3d at p. 561.) "Yet, just as the term 'district' under the Sixth Amendment has no relation whatever to a particular administrative 'district' in Los Angeles County, likewise the term 'community,' as used in cases discussing the issue of impartiality, is neither the geographical equivalent of, nor the lexical

synonym of, a local, intercounty district such as the Central District of Los Angeles." (*Ibid.*)

Cautioning that "the majority's decision could significantly impede the administration of criminal justice in Los Angeles County," the dissent concluded, "I fail to perceive any justifiable reasons for adding this additional restriction upon the orderly administration of justice." (*Jones, supra,* 9 Cal.3d at pp. 564-565.)

We agree with Justice Burke's dissent and conclude that *Jones* was incorrectly decided. As the dissent points out, the *Jones* majority opinion rests on questionable authority. In addition, as we illustrate below, the weight of cases before and after *Jones* in both federal and other state jurisdictions is contrary to the *Jones* court's expansion of the vicinage right. The two cases relied on by the *Jones* majority—*Alvarado* v. *State* (Alaska 1971) 486 P.2d 891 and *State of Maryland* v. *Brown* (D.Md. 1969) 295 F.Supp. 63—are not controlling. The *Alvarado* court expressly recognized that the "narrow issue" before it was cross-section representation; the court was concerned with the immense cultural differences between residents of the place of trial, Anchorage, and of the remote Indian village where the crime was committed. As for the *Brown* case, as we illustrate in the next section, insofar as it holds that a defendant may not be tried by a jury that excludes residents of the jurisdiction where the crime occurred, it is contrary to all of the later decisions in the circuit courts as they relate to both federal and state defendants.

D. *The Decisions of Other Jurisdictions.*

Courts have had few occasions to construe the vicinage requirement in the Sixth Amendment. (See 2 LaFave & Israel, Criminal Procedure (1984) § 21.2, p. 715.)

Insofar as the procedures for trial of criminal cases in federal court have been challenged and validated under the Sixth Amendment vicinage provision, they provide guidance in determining the vicinage rights that accrue to defendants under the federal Constitution in the trial of criminal cases in state courts. ■ Although a federal criminal defendant has a clear right to be tried within the federal judicial district in which the crime is committed (Fed. Rules Crim. Proc., rule 18, 18 U.S.C.), there is no constitutional right to trial in a particular division of a judicial district. (*United States* v. *Anderson* (1946) 328 U.S. 699, 704, 705 [90 L.Ed. 1529, 1532-1533, 66 S.Ct. 1213]; *United States* v. *Dickie* (5th Cir. 1985) 775 F.2d 607, 610; *Franklin* v. *United States* (5th Cir. 1967) 384 F.2d 377, 378, cert. den. 390 U.S. 954 [19 L.Ed.2d 1147, 88 S.Ct. 1048].) Further, there is no constitutional right to

have jurors drawn from the entire district in which the crime occurred. (*Ruthenberg* v. *United States* (1918) 245 U.S. 480, 482 [62 L.Ed. 414, 418, 38 S.Ct. 168].) The procedures for selection of jurors is set out in the Jury Selection and Service Act of 1968, 28 United States Code section 1861. The act requires only that selection be made from political subdivisions surrounding the place where the court is held; it gives no right to a jury from the entire district. The restriction has been upheld against constitutional challenge. *United States* v. *Florence* (4th Cir. 1972) 456 F.2d 46 is illustrative: In *Florence,* the court held that defendant, of Parkersburg, West Virginia, had neither a constitutional nor statutory right to a jury selected from the entire federal judicial district or to a jury selected from the Parkersburg division of that district (locale of the crime): "The validity of a selection less encompassing than district-wide was repeatedly upheld against attacks that a defendant was entitled to a jury selected from the entire district and not from just the division or area surrounding the place of trial where trial was held. (*United States* v. *Gottfried,* 165 F.2d 360 (2d Cir. 1948), cert. den., 333 U.S. 860 . . . .) It should be noted that *United States* v. *Gottfried, supra,* upheld the validity of this restriction even after consideration of *Thiel* v. *Southern Pacific Co.,* 328 U.S. 217 . . . (1946), . . . which held that jurors must be drawn in such a manner as to include representatives of all of the economic, social, religious, political and geographical groups of the community. Thus, under old § 1865(a) the district court would have been permitted to draw jurors only from the Elkins 'division [locale of *Florence* trial],' and neither the 1968 Act nor the Constitution requires a departure from this rule." (*Id.* at p. 49.)

A number of other circuit court decisions have interpreted the vicinage provision of the Sixth Amendment to guarantee, in federal prosecutions, only selection of a jury drawn from within the federal judicial district, *and not from within the division,* in which the crime was committed. (See *United States* v. *Balistrieri* (7th Cir. 1985) 778 F.2d 1226, 1229, cert. den. (1986) 477 U.S. 908 [91 L.Ed.2d 573, 106 S.Ct. 3284]; *United States* v. *Young* (8th Cir. 1980) 618 F.2d 1281, 1288, cert. den. (1980) 449 U.S. 844 [66 L.Ed.2d 52, 101 S.Ct. 126]; *United States* v. *Mase* (2d Cir. 1977) 556 F.2d 671, 675, cert. den. (1978) 435 U.S. 916 [55 L.Ed.2d 508, 98 S.Ct. 1472]; *Franklin* v. *United States, supra,* 384 F.2d 377, 378.)

The Sixth Amendment vicinage rights have been similarly delineated for state criminal prosecutions where a defendant is tried in one county before a jury drawn from that county and which excludes residents of the county where the crime occurred. (*Zicarelli* v. *Gray, supra,* 543 F.2d 466.) Zicarelli was the subject of several state indictments arising out of crimes committed in Hudson County, New Jersey. Upon motion of the prosecution, venue was shifted to Burlington County, where Zicarelli was

tried and convicted on several counts by a jury drawn from Burlington County. The New Jersey Supreme Court upheld his convictions; the federal district court denied a petition for writ of habeas corpus; the circuit court upheld the lower court's order.[7]

After a review of the federal and state cases, the *Zicarelli* court concluded: "[*United States* v.] *Florence* [, *supra*, 456 F.2d 46] and the majority of the other decisions appear to allow substantially the same latitude as was given the federal courts in the late eighteenth century. With few exceptions, the modern cases require that the petit jurors be drawn from within the state and federal judicial district in which the crime was committed, but they do not compel a narrower geographical focus than that. They are thus consistent with the understanding of the geographical limitations expressed by Congress in 1789 and adopted by the states in the following two years. And they adhere to the historical ambience of the amendment. [¶] We therefore hold that Zicarelli's federal constitutional rights were not transgressed when the state of New Jersey tried him before a jury drawn from Burlington County on charges of criminal activity that had occurred in Hudson County. The petit jury was drawn from both the state and the federal judicial district within which the crimes occurred, and the state-and-district guarantee of the Constitution promises no more." (*Zicarelli,* 543 F.2d at p. 482, fn. omitted.)

Consistent with *Zicarelli* is *Bradley* v. *Judges of Super. Ct. for Los Angeles Cty.* (9th Cir. 1976) 531 F.2d 413, which involved, inter alia, state prisoners' claims that their rights were violated as a result of being tried by juries chosen under Code of Civil Procedure section 206. Section 206, as it stood at the time, "permitted the selection of jurors in either of two ways: In one (district draw) jurors are chosen from voters residing in the district of the trial. The other (dual draw) is the same, except that jurors for Central District trials are chosen from the voters of the whole county." (*Bradley, supra,* 531 F.2d at p. 415.) The prisoners claimed that they were deprived of their right under the Sixth Amendment to a jury of the vicinage when they were tried in the Central District with juries chosen by the dual draw system. Although *Bradley* involved section 206 and a cross-section representation claim as well, the portion of *Bradley* addressing the vicinage requirement is nonetheless instructive, as *Bradley* arose in the Los Angeles County Superior Court.

The *Bradley* court observed that the vicinage requirement was deleted from the Sixth Amendment by the Senate, as it was felt to be too strict and

---

[7] Significantly, California venue statutes would preclude transfer of criminal actions from the county of original venue absent waiver by the defendant or the exhaustion of all jury panels. (Pen. Code, §§ 1033, 1034.)

"[a]t the time, juries were drawn from the county in only a few states, and juries drawn from a whole state were not unheard-of." (*Bradley, supra,* 531 F.2d at p. 417.) The court commented that modern day Los Angeles County, with its "efficient network of transportation and communications," is no less acceptable a vicinage than a state of the Revolutionary period with a dispersed and isolated population. (*Ibid.*) Concluding that there was no vicinage violation, the court declared, "the 'district' from which the Constitution requires a jury to be drawn need not be identical to a judicial subdivision such as the Central District." (*Ibid.*)

The majority of state courts considering the vicinage issue have declined to expand the vicinage right as far as the majority did in *Jones, supra,* 9 Cal.3d 546. (See *Com.* v. *Duteau* (1981) 384 Mass. 321 [424 N.E.2d 1119, 1126]; *People* v. *Taylor* (1976) 39 N.Y.2d 649 [385 N.Y.S.2d 270, 350 N.E.2d 600, 603]; *People* v. *Goldswer* (1976) 39 N.Y.2d 656 [385 N.Y.S.2d 274, 350 N.E.2d 604, 608]; *State* v. *Kappos* (Iowa 1971) 189 N.W.2d 563; cf. *People* v. *Scher* (1973) 76 Misc.2d 71 [349 N.Y.S.2d 902, 911-12].)

In *People* v. *Taylor, supra,* 350 N.E.2d 600, the New York Court of Appeals considered a challenge to a New York statute establishing special, centralized narcotics "parts," or districts, to hear narcotics indictments in certain cities, including New York City. The statute provided that narcotics cases could be transferred from any county to the special narcotics part and that "trial of an indictment in a special narcotics part [should] for all purposes be deemed to be a trial in the county in which the indictment was filed." (*Taylor, supra,* 350 N.E.2d at p. 602, citations omitted.) Taylor urged that the term "district" in the Sixth Amendment was synonymous with the term "county" in state trials and that, because he was tried by a jury drawn exclusively from New York County for crimes committed in Kings County, he was denied the right to a jury of the vicinage as well as an impartial jury representing a cross-section of the community.

The *Taylor* court determined that, under either the state or federal Constitutions, Taylor was denied neither. Addressing the Sixth Amendment contentions, the court noted that "in Federal prosecutions the 'word district as used in the Sixth Amendment no doubt referred to the judicial districts established' by Congress in the Federal Judiciary Act . . . but the fact remains that the Legislature of this State—and most States generally . . .—has designated the place of trial without reference to the judicial district created by [the Federal Judiciary Act]. . . . [D]efendant's rights in this regard have been governed by . . . the common-law right to be tried by a jury from the county where the crime was committed unless the Legislature provides otherwise." (*Taylor, supra,* 350 N.E.2d at p. 602.)

E. *The Vicinage Defined as the County.*

The Sixth Amendment vicinage right guarantees a criminal defendant the right to a trial in the "State and district" encompassing the scene of the crime. That "district," states the Sixth Amendment, "shall have been previously ascertained by law."

Were we to follow a literal interpretation of the Sixth Amendment, we would conclude, as have a number of other jurisdictions, that a criminal defendant is merely entitled to a jury drawn from within the *federal* judicial district wherein the crime was committed. (See especially *Zicarelli* v. *Gray, supra,* 543 F.2d 466; *People* v. *Taylor, supra,* 350 N.E.2d 600; *Com.* v. *Duteau, supra,* 424 N.E.2d 1119.)

We decline to interpret a state criminal defendant's vicinage right so literally. A literal interpretation has little meaning in our system, where the Legislature has created jurisdictional boundaries that bear no relationship to the federal judicial districts.[8] We also reject the narrow interpretation of vicinage proposed in *Jones, supra,* 9 Cal.3d 546. *Jones,* decided 15 years ago by a bare majority of this court, stands virtually alone in its requirement that the Sixth Amendment entitles a defendant to a jury panel that includes residents of the superior court judicial district in which the crime was committed. *Jones* lacks foundation in Sixth Amendment principles and is contrary to the majority of decisions addressing the question.

We have looked for direction in the federal cases that have analyzed the Sixth Amendment vicinage right. We find no violation of the Sixth Amendment vicinage right in the procedures followed in Los Angeles County for selection of jury panels—panels which include residents of the county, not limited to residents of the municipal or superior court judicial district where the crime was committed.

---

[8] Criminal jurisdiction of the superior courts is, in part, set forth in Penal Code section 691, subdivision (c), which provides in relevant part: " . . . the words 'jurisdictional territory' when used with reference to a court, mean the city and county, county, city, township, or other limited territory over which the criminal jurisdiction of the court extends, as provided by law, and in case of a superior court mean the county in which the court sits."

Criminal jurisdiction for municipal courts is prescribed in Penal Code section 1462.2, which provides in relevant part: ". . . the proper court for the trial of criminal cases amounting to misdemeanor shall be determined as follows: Any municipal or justice court, having jurisdiction of the subject matter of the case, established in the county within which the offense charged was committed, is the proper court for the trial of the case. . . ."

In sum, to the extent it is inconsistent with the views expressed in this opinion, we overrule *Jones* and hold that in California the boundaries of the vicinage are coterminous with the boundaries of the county.[9]

### DISPOSITION

The judgment of the Court of Appeal is reversed and the matter is remanded to the Court of Appeal with directions to deny Hernandez's petition.

Lucas, C. J., Eagleson, J., Kaufman, J., and Arguelles, J.,* concurred.

**MOSK, J.**—I dissent.

I joined Justice Sullivan, Chief Justice Wright and Justice Tobriner in forming the majority in *People* v. *Jones* (1973) 9 Cal.3d 546 [108 Cal.Rptr. 345, 510 P.2d 705]. I believed the opinion was correct then and I see no persuasive reason to ignore stare decisis and to overrule the rule therein established after it has been in effect and unchallenged for 16 years.

*Jones* declared it "undeniable that the Sixth Amendment did enlarge the total area from which the jury can be drawn over the area which obtained at common law and that the Sixth Amendment allows the Legislature to define the total size of that area by defining the size of the judicial districts. . . . Thus, while the outer limits of the 'district' as used in the Sixth Amendment are flexible, encompassing greater or smaller areas as the Legislature deems wise, the mandate of the Sixth Amendment remains immutable. The district, however large or small, from which the jury is drawn must include the area wherein the crime was committed." (9 Cal.3d at p. 554, fn. omitted.)

The county-wide concept of the majority would inevitably create circumstances in which a defendant would not be tried entirely by residents of the vicinage, i.e., "the district wherein the crime shall have been committed" as required by the Sixth Amendment.

It seems to me the majority create unnecessary confusion by defining "district" broadly as "county" in this case, while simultaneously defining

---

[9] Our decision concerns only the parameters of the constitutional right of a criminal defendant to a jury of the *vicinage* as guaranteed by the federal Constitution. That is defendant's sole challenge on this appeal. This case presents no issue of cross-section representation.

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.

"community" as limited to "district" in *Williams* v. *Superior Court, post,* page 736 [263 Cal.Rptr. 503, 781 P.2d 537].

As the Attorney General urges, I would define "district" in the same manner in both cases: it is the judicial district as legislatively or judicially created. Consistency would appear to be the simplest method of guiding the bench and bar.

**BROUSSARD, J.**—I dissent. The two decisions filed today—*Williams* v. *Superior Court, post,* page 736 [263 Cal.Rptr. 503, 781 P.2d 537] (hereafter cited as *Williams*) and the present decision—together threaten to undermine both the defendant's right to a representative jury and his right to a jury of the vicinage. After today, those fundamental constitutional rights will mean no more than a right to be tried before a jury representative of someplace or other—the place to be chosen by the state. Thus defendant's rights are reduced to a mere formality, a facade without substance, a "hollow form of words." (*People* v. *Wheeler* (1978) 22 Cal.3d 258, 272 [148 Cal.Rptr. 890, 583 P.2d 748].)

I.

*Williams* concerned the defendant's right to a jury representative of "the community." It is intended to decide (at least for cases tried in the Los Angeles County Superior Court) that the community is the judicial district, and goes on to declare that the relevant judicial district is the one where defendant is tried. (*Williams, supra, post,* at pp. 744-745; see dis. opn. at p. 748.) Thus, if defendant is tried in any of the 11 superior court judicial districts in Los Angeles County, his constitutional right is to a jury representative of *that* district, even if the district in question has no relationship to the charged crime. He has no right to a jury representative of the district where the crime was committed, unless that is also the place of trial; he has no right to a jury representative of the county as a whole.

The present case concerns the defendant's right to a jury selected from "the vicinage" of the crime. If we were to hold that "vicinage" means the same thing as "community," the vicinage right would guarantee defendant a trial in the district where the crime was committed. Such a holding would dispel the dangers created by the *Williams* decision. The majority, however, hold that the vicinage is not the community but the county, and that defendant's right to be tried in the vicinage is satisfied if the jury is selected from any portion of the county, no matter how remote from the place of the crime.

When we put the two decisions together, we can see clearly how they will affect the racial composition of the jury. The 11 superior court districts in

Los Angeles County have markedly different racial mixes. Juries from the South Central District will be about 25 percent Black. The Central District also has large proportions of Blacks and Hispanics. The Western District, by contrast, is 90 percent White, and the North Valley District has even less minority representation. Under the majority decision, when a court decides where a case is to be tried, and which community the jury must represent, it is also deciding whether the defendant is likely to be tried by a racially mixed jury or a predominately White jury.

Even though a crime is committed in the South Central District, the present decision would permit the prosecutor to file charges in any of the 11 districts he prefers.[1] Once charges are filed, the court can transfer the case to any district it chooses.[2] Thus the case in question may end up being tried in the North Valley District, before a jury representative of that district. If that happens, it is irrelevant, according to the majority, that (a) the North Valley District is not the community where the crime was committed, (b) that residents of the community where the crime was committed are systematically excluded from the North Valley District venire, (c) that the North Valley District was selected by the state, for reasons of its own convenience and preference, over the objection of the defendant, and (d) that by selecting the North Valley District, the state has substantially reduced or eliminated minority representation on the jury.

## II.

The majority opinion reaches its conclusion without considering the interests, community and individual, protected by the rights to a representative jury and a jury of the vicinage. In *People v. Guzman* (1988) 45 Cal.3d 915 [248 Cal.Rptr. 467, 755 P.2d 917], we explained that the vicinage right "vindicates the community's right to sit in judgment on crimes committed within its territory. . . . 'As a result, where jurors act [ ] as the conscience of the community, they would be reflecting the conscience of their own community, however large, rather than the conscience of a community

---

[1] Los Angeles Superior Court rule 300, section 3, requires the prosecutor to file either in the district where the crime was committed, the district where the preliminary hearing was held, or the Central District. Thus the prosecutor's choices, while somewhat limited, will rarely be confined to the district of the crime. Moreover, rule 300 is simply a local rule of court. Under the majority decision, the superior court could constitutionally change that rule to permit the prosecutor to file in any district he chose.

Under rule 300, section 5, when calendars become congested the presiding judge can order cases which ordinarily could be filed in one district to be filed in another district. The rule imposes no restriction on the judge's choice of the district where the cases must be filed.

[2] Los Angeles Superior Court rule 300, sections 5 and 6, permit the transfer of cases to relieve court congestion, for the convenience of witnesses, or "to promote the ends of justice." It imposes no limitation on the place to which the case is transferred.

unaffected by the crime.'. . . Trials in the community of local criminal matters, particularly shocking crimes, provide a substitute for the natural human reactions of outrage, protest and some form of vengeful self-help. . . . Absent a showing that there is a reasonable likelihood of an unfair trial, a community retains the right to try its own crimes." (P. 937, citations and fns. omitted.) *Taylor* v. *Louisiana* (1975) 419 U.S. 522, 530 [42 L.Ed.2d 690, 698, 95 S.Ct. 692], spoke in similar terms of the right to a representative jury: "Community participation in the administration of the criminal law . . . is not only consistent with our democratic heritage but is also critical to public confidence in the fairness of the criminal justice system."

But the value of community participation is diminished if the community where the case is tried, from which the jury is selected, and which the jury represents, is " 'a community unaffected by the crime.' " (*People* v. *Guzman, supra,* 45 Cal.3d 915, 937.) When a crime committed in the South Central District is tried in the North Valley District—or vice versa—the community most affected by the crime is excluded from any participation in the verdict.

The right to a jury of the vicinage serves also to protect the defendant. The vicinage right rests on the perception that persons from the community where the crime was committed would be familiar with the conditions, practices, and mores of the community, that they were the defendant's true "peers" who alone could give him a fair trial. (See Kershen, *Vicinage* (1976) 29 Okla.L.Rev. 801, 834.) "Supporters of a jury of the vicinage clearly saw that because a jury would exercise its function as the conscience of the community to reflect the attitudes, sympathies, and values of the community from which the jury was drawn, a jury of the vicinage would be different from a jury anywhere else." (*Id.* at p. 842.) The right to a representative jury addresses the same concerns, guaranteeing that the attitudes, sympathies and values of cognizable community groups are not excluded in the process of selecting the jury. (See *People* v. *Wheeler* (1978) 22 Cal.3d 258, 266-267 [148 Cal.Rptr. 890, 583 P.2d 748].)

But the protective interaction of the right to a representative jury and the right to a jury of the vicinage fails if "community" means one thing for jury representation and something quite different for vicinage. The majority here permit a case to be tried by a jury selected entirely from a judicial district which may have no more connection to the case than its possession of the next open courtroom. The jurors of that community may have no understanding of the local conditions which gave rise to, and may mitigate, the crime. Their attitudes, sympathies, and values are not those of the residents of the district where the crime was committed. At the same time, attitudes

and values characteristic of the place of the crime may find no voice, because the cognizable groups who hold those attitudes are unrepresented in the district of trial.

We need a consistent definition of "community" to protect the values underlying the constitutional right to representative jury and to a jury of the vicinage. If we take as given *Williams*'s holding that for purposes of representation the community is the judicial district, then I submit we should hold that for the purpose of vicinage the community is also the judicial district.

## III.

The majority do not tell us why they select the county instead of the judicial district as the vicinage. Most of their opinion reviews the federal decisions on vicinage, most of which hold that under the Sixth Amendment vicinage means the federal judicial district. That holding, however, turns out to be of little use in our present task, that of defining "a state criminal defendant's vicinage right." (*Ante,* p. 728.) As the majority point out, a definition in terms of federal districts "has little meaning in our system, where the Legislature has created jurisdictional boundaries that bear no relationship to the federal judicial districts [in the state]." (*Ibid.*) The majority then criticize, and ultimately overrule, *People* v. *Jones* (1973) 9 Cal.3d 546 [108 Cal.Rptr. 345, 510 P.2d 705], on the ground that it is inconsistent with the definition of vicinage in the federal cases, a definition they have previously acknowledged has little meaning in our system. Finally, the majority "hold that in California the boundaries of the vicinage are coterminous with the boundaries of the county." (*Ante,* p. 729.)[3]

This decision—the crucial decision of the case—is unsupported by the history, cases, or commentators cited by the majority. No reasons of law or policy are advanced in its support. The majority simply assert that the county, not the state judicial district, is the vicinage, and view that assertion as deciding the matter.

If, however, we followed the majority's reasoning in *Williams,* we would have to conclude that the judicial district, not the county, defines the vici-

---

[3] The majority state that "[o]ur decision concerns only the parameters of the constitutional right of a criminal defendant to a jury of the *vicinage* as guaranteed by the federal Constitution. That is defendant's sole challenge on this appeal." (*Ante,* p. 729, fn. 9.) In my opinion, while the federal Constitution could support a holding that the vicinage in every state is defined by the federal judicial district, it offers no support for the majority's holding "that in California the boundaries of the vicinage are coterminous with the boundaries of the county" (*ante,* p. 729). It appears, however, that the majority do not decide the question of vicinage under the California Constitution or statutes.

nage. *Williams* reviewed legislation establishing the superior court districts of Los Angeles County. (See *Williams*, *supra*, *post*, at pp. 744-745.) That legislation does not expressly, or even by implication, designate the judicial district as the "community" which the jury can represent. It does, however, arguably establish the district as the basic unit of the superior court system in Los Angeles County. In the majority's words, "the considerations that prompted creation of the districts in the first place—the practical realities of the county's unique demographics, its geographical expanse, and the need for judicial efficiency—convince us that the Legislature intended that the districts serve as the community . . . . In a sense, the districts were to be microcosms of an entity—the Los Angeles Superior Court—that had become unmanageable and inefficient as a single unit." (*Williams*, *supra*, *post*, at p. 745.) From that fact the majority conclude that the Legislature intended the districts serve as the community represented by the jurors.

Identical reasoning should lead to the conclusion that the Legislature intended the districts to serve as the vicinage from which jurors are selected. The power of the Legislature to define the vicinage (see *O'Hare* v. *Superior Court* (1987) 43 Cal.3d 86, 94-95 [233 Cal.Rptr. 332, 729 P.2d 766]) is even better established than its power to define the community to be represented by the jurors. The statutes themselves use neither "vicinage" nor "community," but speak of juries selected from and representing "the area served by the court." (See, e.g., Code Civ. Proc., §§ 194, subd. (p), and 197, subd. (a).) If the "area served by the court" of each judicial district is limited to that district, which functions as the fundamental entity for trial of crimes in Los Angeles County, I see no reason why it should not also define the vicinage of crimes committed in that county.

IV.

A conclusion that the judicial district is the vicinage would conform to California precedent. *People* v. *Jones, supra,* 9 Cal.3d 546, for 16 years the controlling California case, held expressly that "a jury drawn from only a portion of a county, exclusive of the place of the commission of the crime, will not satisfy the [constitutional] requirement." (P. 553.) *Jones* concluded that the Constitution guarantees a criminal defendant "the right to be tried by an impartial jury comprising a representative cross-section of, and selected from residents of, the judicial district where the crime was committed." (P. 556.) *O'Hare* v. *Superior Court, supra,* 43 Cal.3d 86, 101, spoke of the constitutional guaranty "that jurors be selected from an area which includes the scene of the crime." *People* v. *Guzman, supra,* 43 Cal.3d 915, cited *Jones* with approval (p. 936) and, as I noted earlier, stressed the right of the community to participate in the trial of crimes committed in that communi-

ty. Only a jury selected from the community where the crime was committed will comply with the principles laid down in these decisions.

The majority, however, reject California precedent. They overrule *Jones* (the majority opinion does not mention *O'Hare* or *Guzman*), which will come as a shock to the litigants, all of whom recognized *Jones* as controlling and argued only its application in the factual setting of the present case. Yet the majority's only reason for overruling *Jones* is that it was inconsistent with the majority of decisions in the lower federal courts. But the majority's own decision conforms no better to federal precedent (which would require us to use the *federal* district, not the county, as the vicinage). If we are going to fashion a California rule which differs from the federal right to a jury selected from the federal district where the crime was committed, we should not start by abandoning California precedent.

The California decisions rejected today were crafted in light of the practical exigencies of jury selection in this state. Los Angeles County, the subject of this case, is unique in its population, diversity, and transportation problems. Its various regions are racially disparate, with some judicial districts made up largely of one minority group, while in others that group will be sparsely represented. Its courts cannot be efficiently managed as a single unit. (*Williams, supra, post*, at p. 745.) The majority rely on these realities in *Williams* to hold that juries should represent the judicial district instead of the county. Given this holding, defining vicinage as the judicial district is essential to protect the right of the defendant to a representative jury, and to protect the right of each community within this county to participate in the trial of crimes committed in that community.

Petitioner's application for a rehearing was denied January 18, 1990. Mosk, J., and Broussard, J., were of the opinion that the petition should be granted.