[No. A042895. First Dist., Div. Four. Feb. 28, 1989.]

THE PEOPLE, Plaintiff and Appellant, v.
UAKBAR SHARRIEFF BISMILLAH, Defendant and Respondent.

**COUNSEL**

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Aileen Bunney and David D. Salmon, Deputy Attorneys General, for Plaintiff and Appellant.

Harvey E. Goldfine, under appointment by the Court of Appeal, for Defendant and Respondent.

**OPINION**

**ANDERSON, P. J.**—On December 18, 1987, the San Francisco District Attorney charged defendant and respondent Uakbar Sharrieff Bismillah with (1) four counts of assault with a deadly weapon (a vehicle) upon a peace officer (Pen. Code,[1] § 245, subd. (b)); (2) one count of driving under the influence of an alcoholic beverage and causing bodily injury (Veh. Code, § 23153, subd. (a)), with special allegations pursuant to Vehicle Code sections 23182 and 23185, respectively, of injuring more than one victim and having three prior convictions for driving while under the influence; (3) one count of causing injury by fleeing from a peace officer while operating a vehicle (former Veh. Code, § 2800.2);[2] and (4) one count of battery on a peace officer (§ 243, subd. (b)). The information stated defendant committed all offenses within the City and County of San Francisco, and further

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

[2] Former Vehicle Code section 2800.2 was renumbered section 2800 .3 and amended by Statutes 1988, chapter 504, section 2, effective August 22, 1988.

alleged prior service of a prison term for attempted arson (§ 667.5, subd. (b)).

Pursuant to section 995, defendant moved to dismiss the four aggravated assault counts on the ground that the magistrate committed him illegally because the San Francisco Superior Court lacked territorial jurisdiction over the charges. He further claimed that San Francisco venue would deprive defendant of his Sixth Amendment right to trial by jury drawn from the vicinage wherein the offenses purportedly occurred. The trial court granted the motion and the People appeal from the dismissal which followed. We reverse.

## I. Facts

On the evening of July 9, 1987, San Francisco Police Officer McCann was on motorcycle patrol near Broadway and Columbus in San Francisco. He observed defendant make an illegal left-hand turn while driving a brown Chrysler. McCann pulled defendant over at Columbus and Grant, and requested his driver's license. Defendant said he had misplaced his license and produced, instead, a Versatel card and the car registration. McCann smelled a strong odor of an alcoholic beverage on defendant's breath and observed his eyes were bloodshot.

Upon radioing headquarters of the stop, McCann learned that defendant's license was suspended and revoked. McCann then informed defendant he intended to administer a field coordination test, whereupon defendant ran to the rear of his car, reentered, and tried to start up, ignoring the officer's demands to halt. McCann then attempted to seize the key, but defendant hit him in the arm several times and forced him out of the car.

Defendant then made a U-turn, proceeded through a red light and made another illegal left-hand turn in front of four lanes of oncoming traffic, ultimately fleeing eastbound on Broadway. McCann broadcast an emergency situation and indicated defendant might be heading across the San Francisco-Oakland Bay Bridge.

Based on his training and experience, and taking into account defendant's bloodshot eyes, his breath and his driving, McCann believed defendant was "possibly under the influence."

San Francisco Police Officer Cima, also on motorcycle patrol, heard the broadcast and headed for the bridge. He spotted the brown Chrysler on the Oakland side of the bridge and began tailing it. Defendant sped up some 10

to 15 miles per hour and began changing lanes when Cima activated his lights and siren.

Meanwhile, San Francisco Police Officers Pardini and Smith also heard the radio report and proceeded to the bridge. When they first observed the defendant, he was travelling with the flow of traffic, and Cima was directly behind the Chrysler. Pardini positioned his patrol car behind the Chrysler and activated his light and siren. Defendant accelerated to around 75 miles per hour and began weaving in and out of lanes without signalling, narrowly avoiding collisions with numerous vehicles over five lanes of traffic.

Pardini and Smith pursued defendant to the Powell Street offramp in Emeryville. While on the offramp, Pardini passed defendant on the left and maneuvered the patrol car in front of the Chrysler in order to prevent defendant from going through the intersections beyond the ramp and potentially striking another vehicle. Defendant moved toward the left of the patrol car; Pardini accelerated and recentered so that defendant could not pass, and then slowed down. At that point defendant sped up and rear-ended the patrol car, moving it forward with enough force to rock the officers back and forth in their seats. After creating a second gap between the cars, Pardini began slowing again to force defendant to stop. Instead, defendant again sped up and rear-ended the patrol car a second time. After that, both cars came to a stop.

The officers approached the Chrysler and ordered defendant to exit. He refused, and they forcefully removed him, placed him under arrest and drove him back to San Francisco.

Pardini testified he also smelled a strong odor of an alcoholic beverage on defendant's breath and noticed his eyes were red and watery. He commented that defendant jumped from topic to topic and "was very incoherent in his statements." Pardini concluded defendant was under the influence.

As a result of the collisions, Smith suffered a whiplash and missed 10-12 days of work; Pardini was out of work for 8 days, suffering from lower back strain. Both received hospital treatment for their injuries.

## II. DISCUSSION

The People challenge the trial court's dismissal of the aggravated assault counts, arguing that San Francisco Superior Court has territorial jurisdic-

tion over all counts pursuant to sections 781 and 783.[3] They further propose that defendant's right to a trial before a jury from the "vicinage" would be protected by drawing a venire from both San Francisco and Alameda Counties.

## A. *Territorial Jurisdiction*

Section 777 states the basic rule of local jurisdiction: "except as otherwise provided by law the jurisdiction of every public offense is in any competent court within the jurisdictional territory of which it is committed." With respect to felonies triable in superior court, the "jurisdictional territory" is the county. (§ 691; *Adams* v. *Superior Court* (1972) 27 Cal.App.3d 719, 722 [104 Cal.Rptr. 144], fn. 2.)

■ Section 781 constitutes an exception to the rule when acts or effects of an offense occur in multiple counties.[4] Section 781 is remedial and, thus, we construe the statute liberally to achieve its purpose of expanding criminal jurisdiction beyond rigid common law limits. (*People* v. *Powell* (1967) 67 Cal.2d 32, 63 [59 Cal.Rptr. 817, 429 P.2d 137]; *People* v. *Williams* (1973) 36 Cal.App.3d 262, 268 [111 Cal.Rptr. 378].) We therefore interpret section 781 in a commonsense manner with proper regard for the facts and circumstances of the case rather than technical niceties. (*Ibid.*)

Courts have construed the phrase "requisite to the consummation of the offense" to mean requisite to achieving the offender's unlawful purpose. (See *People* v. *Hernandez* (1976) 63 Cal.App.3d 393, 403 [133 Cal.Rptr. 745].) Pursuant to this interpretation, venue is proper in a county where only preliminary arrangements or acts leading to commission of the crime occur, even though such acts are not essential elements of the charged offense. (*Ibid.*; *People* v. *Tolbert* (1986) 176 Cal.App.3d 685, 691 [222 Cal.Rptr. 313].)

As an example, in *Hernandez,* the Court of Appeal concluded Fresno County was vested with territorial jurisdiction to try defendant on a robbery charge where defendant and his companions kidnapped the victim in Fresno County and raped and robbed her in Madera County. As the young men started to drive off, someone observed the victim take a piece of paper from her purse and write down the license number of defendant's car. On the

---

[3] Because we conclude section 781 applies to this case, we need not resolve whether the concurrent jurisdiction provisions of section 783 also apply.

[4] Section 781 reads: "When a public offense is committed in part in one jurisdictional territory and in part in another, or the acts or effects thereof constituting or requisite to the consummation of the offense occur in two or more jurisdictional territories, the jurisdiction of such offense is in any competent court within either jurisdictional territory."

mistaken belief that she put the paper back in her purse, the man chased after the victim and seized her purse. In holding that Fresno County had jurisdiction over the robbery, the court reasoned that the purpose of the robbery was to thwart discovery of defendant's involvement in the earlier crimes of kidnapping and rape. As such, the robbery was necessary to successful completion of those offenses without detection by law enforcement officials. (*Hernandez, supra,* 63 Cal.App.3d at p. 403.) All three crimes occurred consecutively over a comparatively brief time frame, and were aimed at successful consummation of a common purpose. (*Ibid.*)

Likewise, in the case of *People* v. *Chapman* (1977) 72 Cal.App.3d 6 [139 Cal.Rptr. 808], the court determined that venue was appropriate in a Santa Barbara County court for prosecution of the crime of taking an automobile without consent with intent to deprive the owner of its title or possession; the preliminary act of taking the automobile occurred in Santa Barbara where defendant rented the car in question, even though the intent may have arisen in another county. (*Id.,* at p. 11.) And in *People* v. *Powell, supra,* 67 Cal.2d 32, the Supreme Court confronted a jurisdictional challenge to a kidnapping-murder case occurring in Los Angeles and Kern Counties. Defendant Powell was fleeing the scene of an armed robbery when two police officers stopped him in Los Angeles County. Powell and his companion kidnapped the officers, then transported them to Kern County. While en route they learned the officers had stopped the car for lack of license plate illumination. Apparently, defendant originally intended to release the officers, but ended up murdering one in a remote area of Kern County; the other escaped. The Supreme Court determined the Los Angeles County Superior Court had territorial jurisdiction to try the murder charge. "[U]nder section 781 the county in which the 'preliminary arrangements' for the crime were made is a proper county in which to prosecute the completed offense, 'although the acts performed there did not constitute an essential element of the crime.' [¶] . . . It follows that although the kidnapping of [the officers] in Los Angeles may not have constituted an essential element of the murder offense, there took place in Los Angeles County sufficient acts preliminary to the murder to allow jurisdiction to attach in that county under section 781." (*Id.* at pp. 62-63.)

In the present case it is undisputed that the assaults occurred entirely in Alameda County. The question then becomes whether defendant's conduct in San Francisco County was requisite to accomplishing his overall criminal purpose. Viewing the chain of events in its entirety, it is evident defendant's overriding purpose was to escape apprehension by the San Francisco police. He struck and then fled from Officer McCann in San Francisco to avoid taking the field sobriety test, and then continued to evade Officers Smith, Pardini and Cima as he crossed the bridge. When

Pardini tried to block his passage on the Powell Street offramp, he struck the patrol car twice before Pardini finally succeeded in bringing the Chrysler to a halt. Construing section 781 in a commonsense manner, we find ample acts in San Francisco to justify prosecution there for the assault charges. The various events occurred sequentially, without a gap in the flow, over a short period of time. They were linked together with the common purpose of escape. We therefore hold San Francisco is a proper county for holding defendant to answer on the assault charges.

## B. *Vicinage*

■ Irrespective of venue, defendant also urges us to uphold dismissal of the Alameda County assault charges in recognition of his Sixth Amendment right to a trial by jury from the district (Alameda County) where the assaults occurred.[5] At common law a criminal defendant had the right to be tried by a jury drawn from the vicinage, i.e., neighborhood, in which the alleged crime took place. (*People* v. *Bradford* (1976) 17 Cal.3d 8, 15 [130 Cal.Rptr. 129, 549 P.2d 1225].) The Sixth and Fourteenth Amendments to the United States Constitution preserve the substance of this vicinage right by guaranteeing a defendant in a state criminal prosecution "the right to be tried by an impartial jury comprising a representative cross-section of, and selected from residents of, the judicial district where the crime was committed." (*People* v. *Jones* (1973) 9 Cal.3d 546, 556 [108 Cal.Rptr. 345, 510 P.2d 705].) ■ As further explained in *Jones,* "while the outer limits of the 'district' as used in the Sixth Amendment are flexible, encompassing greater or smaller areas as the Legislature deems wise, the mandate of the Sixth Amendment remains immutable. The district, however large or small, from which the jury is drawn *must include the area wherein the crime was committed."* (*Id.*, at p. 554, italics added; see also *People* v. *Guzman* (1988) 45 Cal.3d 915, 934-937 [248 Cal.Rptr. 467, 755 P.2d 917]; *O'Hare* v. *Superior Court* (1987) 43 Cal.3d 86, 94, 96-97 [233 Cal.Rptr. 332, 729 P.2d 766].)

Defendant's vicinage objection is distinct from the venue matter decided above. The right to a jury of the vicinage refers to the geographical area from which jurors are summoned rather than the place of trial, which is the venue. As a practical matter, vicinage usually follows venue. However, Sixth Amendment vicinage challenges arise in cases such as the present where territorial jurisdiction is vested by statute in more than one county. For example, *People* v. *Barney* (1983) 143 Cal.App.3d 490 [192 Cal.Rptr. 172] involved the jurisdictional statute governing incest (§ 785) which

---

[5] The Sixth Amendment to the United States Constitution provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law. . . ."

grants jurisdiction to the court in the county of apprehension as well as the county of perpetration. The incest allegedly occurred in Riverside County, but the defendant stood trial in Butte County. At the onset of trial, he unsuccessfully lodged a timely vicinage objection; on appeal the reviewing court relied on *Jones* to reverse the Butte County incest conviction. However, the court found no conflict between section 785 and the Sixth Amendment, reasoning that absent a timely vicinage objection, Butte County had the power to adjudicate the incest charge. (*Id.,* at p. 493, fn. 1.)

The vicinage/venue issue presented herein differs from *Barney* in that here we must determine whether, although San Francisco venue is proper under section 781 because "preliminary acts" transpired there, such acts also satisfy the Sixth Amendment vicinage requirement. We are mindful in resolving this issue that our venue statutes must be read "in light of the importance historically attached to *vicinage.*" (*Bradford, supra,* 17 Cal.3d at p. 15.)

The People acknowledge we are bound by *Jones,* but propose that rather than dismissing the Alameda counts, we sanction their proposal of expanding the jury pool to include residents of Alameda County as well as San Francisco County. Such a suggestion is not feasible under our present system of jury selection (see fn. 7 below). Significantly, the court in *People* v. *Powell* (1974) 40 Cal.App.3d 107 [115 Cal.Rptr. 109] (*Powell II*),[6] confronted with the identical conflict between the remedial provisions of section 781 and the vicinage mandate as interpreted in *Jones,* also rejected such a proposal.

The court in *Powell II* first observed that *Jones* did not involve an apparent clash between the section 781 venue provisions and the vicinage doctrine. Thus, the *Jones* court was not called upon to decide whether confining vicinage to the geographical area in which acts preliminary to the actual crime were committed would violate the Sixth Amendment. (*Powell II, supra,* 40 Cal.App.3d at p. 122.) The court further noted that *Jones* was factually dissimilar. *Jones* involved three marijuana sales, each offense occurring in an intracounty judicial district from which no prospective jurors were summoned. Apparently, no "preliminary acts" occurred in that district.

The court in *Powell II* resolved that *Jones* did not compel nullification of concurrent jurisdiction under section 781 nor importation of jurors from one county into another, a practice which would have violated former Code

---

[6]The Supreme Court reversed the convictions of Powell and companion Smith, and remanded for retrial in *People* v. *Powell, supra,* 67 Cal.2d at p. 63. *Powell II* followed a second set of convictions following separate retrials.

of Civil Procedure section 198, subdivision 1 (county residency a prerequisite to jury service).[7] Rather, the court concluded that pursuant to section 781, the Legislature has divided the state into "districts," permitting trials to take place in any county which forms part of such a district. Further, jurors must be drawn from the county of trial, even if only preliminary acts take place in that county. "If that means that for Sixth Amendment purposes California interprets the word 'crime' as including preliminary acts which satisfy the venue requirement of section 781 of the Penal Code, so be it." (40 Cal.App.3d at p. 123.)

We agree with the *Powell II* reasoning. Vicinage principles are not offended by drawing jurors only from San Francisco County where the initial encounter with law enforcement officers occurred in San Francisco, and defendant fled from San Francisco and its peace officers, only to end up injuring them in Alameda County at the end of his flight. Unlike the present case, the connection between the vicinage in *Jones* and *Barney* and the site of the actual crimes was for all meaningful purposes nonexistent.

We reverse the order made pursuant to section 995 dismissing the Alameda County assault charges.

Channell, J., and Perley, J., concurred.

Respondent's petition for review by the Supreme Court was denied May 18, 1989.

---

[7] Under the newly enacted Trial Jury Selection and Management Act (added Stats. 1988, ch. 1245, § 2), persons selected for jury service shall be randomly selected from "the population of the area served by the court." (Code Civ. Proc., §§ 191, 197, subd. (b).) A person is ineligible for jury service if he or she is not a resident "of the jurisdiction wherein they are summoned to serve." (Code Civ. Proc., § 203, subd. (a)(4).) The "jurisdictional territory" of a superior court in a criminal action is the county in which the court sits. (§ 691, subd. (c).) From these provisions it is clear that in a superior court criminal prosecution, the "area served" by the court or the "jurisdiction" from which the prospective juror is summoned is no greater than the county of the superior court. Consequently, even our revised jury selection rules do not provide for the impanelling of intercounty juries.