[No. D011347. Fourth Dist., Div. One. June 4, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
SCOT ALBERT CAMPBELL et al., Defendants and Appellants.

**[Opinion certified for partial publication.[1]]**

---

[1]Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II, III, IV, V and VI.

COUNSEL

David M. McKinney and Gregory Marshall, under appointments by the Court of Appeal, for Defendants and Appellants.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Richard B. Iglehart and George Williamson, Chief Assistant Attorneys General, Harley D. Mayfield, Assistant Attorney General, Rudolf Corona, Jr., Tim Nader, Robert M. Foster and Frederick R. Millar, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

HUFFMAN, Acting P. J.—Scot Albert Campbell and Paul George Werner separately appeal their jury convictions and sentences for various robberies (Pen. Code,[2] § 211) and false imprisonments (§§ 236, 237) arising out of their "money-taking" spree of two fast food restaurants, one in San Diego County and one in Riverside County, on March 12, 1989. They also challenge their convictions and sentences for being in possession of a firearm within the meaning of section 12021, subdivision (a), and the jury findings of and punishment for numerous gun arming and gun use allegations in connection with each substantive crime (§§ 12022, subd. (a), 12022.5, subd. (a)).

Campbell and Werner[3] first contest the jurisdiction of the San Diego Superior Court to try them on the five Riverside County counts for the Temecula Taco Bell robbery. They specifically assert section 786 is unconstitutional. Even if section 786 is constitutional, they argue the San Diego Superior Court lacks jurisdiction to hear the three false imprisonment charges. They seek reversal of those counts.

Additionally, Campbell and Werner contend the trial court erroneously denied their section 1538.5 motions to suppress evidence. They claim there was not sufficient evidence for the robbery count concerning Anjelanita Walls to overcome a motion under section 1118.1. Appellants further claim the trial court erroneously allowed the prosecution to reopen its case to present further evidence concerning the Walls robbery and failed to instruct sua sponte on unanimity for the firearm possession counts. Campbell and

---

[2] All statutory references are to the Penal Code unless otherwise specified.

[3] To the extent an argument is applicable, Campbell and Werner have joined in each other's contentions on appeal.

Werner also claim the court erroneously sentenced them for both firearm use during the Taco Bell robbery and for unlawfully possessing firearms after completion of that robbery in violation of section 654.

Further, they assert there is insufficient evidence they personally used their firearms during the Taco Bell robbery. Finally, Campbell alone[4] claims the two counts charging him with being a convicted felon in possession of a firearm constituted only one crime and therefore one conviction must be reversed.

We shall reverse Campbell's count 11 possession of a firearm conviction, and affirm in all other respects as modified.

I

## FACTUAL AND PROCEDURAL BACKGROUND

At about 2 a.m., March 13, 1989, in order to issue a traffic citation, Oceanside Harbor Police Officer Joseph Edward Spurgeon stopped Werner and Campbell in a white Chevrolet El Camino Werner was driving. During the stop, certain circumstances, which will be discussed in full later, caused Spurgeon to suspect he had stopped more than a traffic violator. After Spurgeon called for backup and asked the passenger Campbell out of the car for a patdown search for weapons, Campbell bolted with Spurgeon in foot pursuit. The backup officer, Victor Ray of the Oceanside Police Department, then apprehended Werner as he opened the driver's door.

A subsequent search of the car netted a jacket containing four 9-millimeter magazine clips, a .38 revolver, a handle grip pump shotgun, an AK-47 rifle, ammunition for the shotgun and AK-47 in a blue nylon bag, a white mesh bag containing some rolled coins and Padre baseball tickets, numerous bullets for the revolver, two pairs of gloves, two ski masks, several pairs of jeans, two black sweatshirts, various rolls of coins, paper money stuffed in socks, a police scanner and a Security Pacific Bank bag. Additionally, a search of the backseat of the patrol car in which Werner was placed after the stop turned up $1,200, largely in $20 bills.

A check of this evidence with ongoing investigations of two fast-food restaurant robberies the day before, March 12, 1989, tied Werner and Campbell to those crimes.

---

[4]As the People concede Werner's contention the imposition reflected on the abstract of judgment for a stayed term on the firearm enhancement allegation, which the jury found "not true" as to him for count 8 (robbery of Walls), was erroneous, we do not discuss this contention other than to strike the punishment on that enhancement and direct the superior court to amend the abstract of judgment to reflect the correct sentence and forward the amended abstract of judgment to the proper authorities.

Campbell, who had eluded Spurgeon, was eventually picked up later on March 13, 1989, at the San Clemente border checkpoint after a secondary search of a truck in which he was a passenger turned up a 9-millimeter semiautomatic handgun and a shotgun wrapped in a jacket under the passenger's seat. His picture was then included in a photographic lineup which was shown to Officers Spurgeon and Ray. Each identified Campbell as the man who ran from the car during the stop.

Thereafter, Campbell and Werner were charged with having committed the early morning robbery of the Cardiff Jack-in-the-Box and the Temecula Taco Bell robbery committed later that same day. In connection with these, each defendant was charged with three counts of robbery, four counts of false imprisonment, and with being a convicted felon in possession of a concealed firearm. It was alleged Campbell personally used a firearm while committing each robbery and false imprisonment and that Werner used a firearm during the Temecula crimes, but was only armed for the Cardiff criminal activity.

The complaint also charged Werner alone with a robbery and false imprisonment stemming from a January robbery of the Cardiff Jack-in-the-Box. Further, it alleged each defendant had previously suffered a serious felony, Campbell for an earlier robbery and Werner for attempted robbery.

At the beginning of the preliminary hearing, both defendants demurred to the complaint on grounds the court did not have jurisdiction over the Temecula, Riverside County, robbery counts. The court overruled the demurrer, finding, pursuant to section 786, jurisdiction did lie. At the end of the preliminary hearing, Campbell and Werner's renewed demurrer on grounds of jurisdiction was also overruled.

Both Campbell and Werner then brought motions for discovery and to suppress evidence. After appropriate hearings, the court denied their respective motions.

*In limine*, Campbell and Werner again raised the matter of jurisdiction on the Riverside County robberies being tried in San Diego County and moved the trial court to sever their counts for trial. The court overruled the renewed demurrer and denied the motion to sever. It then granted Campbell and Werner's motions to bifurcate the issue of their prior convictions for trial, and each stipulated to being ex-felons for purposes of the possession of a firearm counts so that fact would not be before the jury.

Trial then commenced. The victims of the two Jack-in-the-Box robberies testified first. Both described incidents where the robber(s), after taking the

money, forced them by gunpoint into the refrigerator room of each respective restaurant before locking them in and escaping. The employee-victim of the March 12, 1989 robbery testified the robber had black or dark brown eyes and noted Werner's eyes appeared lighter than those of the robber. She also identified the black ski mask and brown gloves, which had been found in Werner and Campbell's car and entered into evidence as exhibits at trial, as the ones worn by the robber who grabbed her during the robbery.

The manager of the Jack-in-the-Box restaurant during this second crime stated the robbers left with approximately $300 and he identified rolls of coins and the Padre tickets found in Werner and Campbell's car as items taken from the restaurant's safe.

Christopher Lee Craddock, the manager of the Taco Bell in Temecula, next testified. He said that after the restaurant had closed at about 11 o'clock that night, he heard an employee named Reina Caballero scream. When he turned to investigate he saw two men come into his restaurant, grab Caballero and put her into the walk-in refrigerator. He then saw one man grab another employee, Anjelanita Walls, and physically bring her over next to him. The man then demanded money. At that time, Craddock had just finished counting the receipts and money for the day and had the safe open to put the drawers of money from the cash registers in it for the next day.

Craddock stated that after he put the money from the drawers in the safe into the bag as demanded, the robber sent Walls to the refrigerator room in the back of the restaurant which was being guarded by the other man, who had his gun in his hand in front of him. Craddock said the robber with him next told him to open a little strongbox located on the safe. After about 20 minutes, because of a 10-minute delay which had to be triggered twice, Craddock opened the strongbox and gave the contents to the robbers. Afterwards, Craddock said the robbers forced him into the walk-in refrigerator, placed a freezer in front of its door and left the restaurant. He also said the 9-millimeter gun in evidence was similar to the one used by the robber who demanded money from him and identified the .38 revolver as being used by the other man. He testified he was very aware of the guns, and was frightened because of the drawn weapons and the threat someone would be hurt if the strongbox wasn't opened the second time.

Barry Milledge and Kim Steven Holliday, other managers of the Taco Bell, but not present at the time of the robbery, testified about the amount of money taken in the restaurant robbery and identified various rolls of coins which were found in the car driven by Werner at the time of the stop by

Officer Spurgeon. Holliday additionally stated it was the managers who had the authority to exchange receipts for money in the safe.

Officers Spurgeon and Ray then testified about the stop and search of the car driven by Werner in Oceanside, the facts of which will be set out more fully in the discussion challenging the section 1538.5 denials. Both officers identified Werner as the driver of the car and Campbell as the passenger who got away. Spurgeon stated that after Werner was arrested, he told him the car was stolen and a computer check confirmed the car was not registered in Werner's or Campbell's names.

Gordon Geary, a United States Border Patrol agent, next testified he was working secondary inspection at the San Clemente traffic checkpoint at around 11 a.m. on March 13, 1989, when a Ford Ranchero with three nervous occupants was directed his way. He identified Campbell as the occupant sitting closest to the passenger side door.

After the driver gave him permission to search the inside of the vehicle and all occupants were outside of it, Geary found the loaded 9-millimeter handgun associated with Campbell in a compartment behind the front seat and found a shotgun wrapped in a jacket on the floorboard directly under the place where Campbell had been seated. On cross-examination he mentioned he also found another gun—a .22 weapon—under the seat.

After the People rested their case, Werner's counsel called three witnesses to testify on his behalf. Reina Caballero, one of the Taco Bell employees, testified she was working with Craddock and Walls at the time of the crime, when she was approached outside the restaurant, pushed back in at gun point and placed in the refrigerator. She stated two other employees, girls, left work "hours before" the robbery. She said the robbers' voices sounded younger than Campbell or Werner looked, and opined disgruntled ex-employees of the restaurant may have committed the robbery.

Sergio Enrique Rodriguez, Caballero's ex-husband who was outside the Taco Bell waiting in his car to pick her up from work, next testified he saw a man and a woman leave the restaurant about 11 or 11:15 p.m. He described them as young and wearing uniforms he didn't recognize. He asked them if Caballero was still inside and they said yes. About seven to ten minutes later his ex-wife came outside and told him the restaurant had been robbed. He stated he did not see any other people come or go from the restaurant and didn't see or hear any cars in the area.

Myrtle Werner, Werner's mother, then testified her son's eyes were hazel or green and the clothes in evidence, specifically the jeans, were too big for her son who was much slimmer.

Neither Werner nor Campbell testified. The defense rested its case after having both defendants stand in front of the jury to view their eye colors.

Outside the jurors' presence, the People asked to put on two rebuttal witnesses. Before discussing the propriety of their testimony, the court on its own questioned whether the prosecution had presented sufficient evidence concerning the alleged Walls robbery in count 8 to have that charge go to the jury to determine if Campbell and Werner were guilty of a second robbery at the Taco Bell.

After much discussion, the People asked to reopen on the limited issue of showing Walls's status as an employee who had joint or constructive possession of the money in the open safe. Over strenuous objection, the court granted the prosecution request, stating it was doing so in all fairness since neither defendant had moved for acquittal of that charge under section 1118.1 before putting on the defense and the issue was basically raised by the court.

The prosecution then gave an offer of proof regarding the rebuttal testimony of two Taco Bell employees, Shawn Morgan and Candi Gardner. Finding the proof adequate, the court allowed them, as well as another police officer, to testify in rebuttal.

Morgan testified he was an employee of the Temecula Taco Bell and had worked the evening shift the night of the robbery. He said he was in a work uniform when he left the restaurant shortly after closing at 10 p.m. with Gardner, another employee whom he dated. As they walked out, he saw a Mexican waiting by a car who asked them if Caballero was still inside. Morgan stated he had nothing to do with the robbery and only found out about it the next day at school.

When asked about his job as a cashier and how he closed out at night, he said the register was only open if he was making a sale and when the restaurant closed, the manager would come, open the register with a key, take the drawer over to the office, count the money and put the drawer away in the safe. He said Walls also worked a register and did whatever else was needed. He testified the manager is the one who controls the money in the restaurant.

Gardner then testified, corroborating Morgan's testimony about them leaving the restaurant and seeing a man waiting for Caballero the night of the crime. She also stated she worked a register and Walls basically did the same. Like Morgan, she denied any involvement in the robbery and said one

had to be a manager with keys to be entitled to count the money at closing time.

Finally, San Diego County Sheriff's Deputy Floyd Feese testified in rebuttal one of the pairs of jeans in evidence would fit Werner.

After the parties rested their respective cases, they argued whether the robbery count involving Walls should go to the jury. Having researched the matter and finding no cases on point, the court decided to let counsel argue the matter to the jury for its determination.

After closing arguments were given and jury instructions and verdict forms read, the jurors retired to deliberate on Campbell's and Werner's guilt. During deliberations the jurors sent out three notes: the first asked for a clarification of "possession" in regard to Walls in the count 8 robbery charge; the second asked for the rereading of the victim's testimony in the two counts involving only Werner; and the third stated the jury was dead-locked on two of the counts.

In response to the questions, it was agreed to have the jury read CALJIC No. 1.24 which defined "possession"; certain testimony was reread; and the court declared a mistrial on the two deadlocked counts involving only Werner.

The court then took the other verdicts in which the jury found Campbell and Werner guilty on the remaining counts and found all the firearm enhancements true, except for the use allegation for Werner concerning the Walls robbery in count 3.

After Campbell and Werner waived jury trial on the bifurcated issue of the validity of their prior serious felony convictions, the court found both convictions true within the meaning of section 667, subdivision (a) for purposes of sentence enhancement. The court thereafter dismissed the two counts relating only to Werner.

At sentencing, the judge imposed a total 16-year, 8-month prison term on Campbell. It consisted of the upper five-year term for robbery of Craddock at the Taco Bell, plus two years for firearm use, a consecutive one year for the robbery of Walls at the Taco Bell (one-third the midterm with the balance stayed and punishment for the firearm use stayed), a consecutive eight months for the false imprisonment of Caballero at the Taco Bell (one-third the midterm with the balance stayed and the firearm use enhancement stayed), a consecutive one-year term for the robbery of the victim at the Jack-in-the-Box (one-third the midterm with the balance stayed), plus eight

months for the firearm use (one-third the midterm with the balance stayed), and two consecutive eight-month terms for the possession of a firearm by a felon counts (with the balances stayed). Punishment for the false imprisonment counts involving the Jack-in-the-Box victim and the Taco Bell victims Craddock and Walls were stayed pursuant to section 654, as were their gun use enhancements. Moreover, the gun use allegation concerning the Walls robbery and false imprisonment of Caballero were stayed. The court also imposed a mandatory five years for the section 667, subdivision (a) prior.

With the exception of staying Werner's punishment on his arming enhancement for the Jack-in-the-Box victim, the court imposed the same terms on the counts Werner was guilty of committing as it had on Campbell.

Both Campbell and Werner filed timely appeals.

## DISCUSSION

### I

### *Territorial Jurisdiction and Vicinage*

At the preliminary hearing and again in superior court, Campbell and Werner moved to dismiss the counts concerning the Temecula Taco Bell robbery on grounds San Diego County lacked jurisdiction. Both attempts to dismiss were denied on the basis section 786 conferred jurisdiction in San Diego County. This section provided in pertinent part, at the time of the crime and trial:

"When property taken in one jurisdictional territory by burglary, robbery, theft, or embezzlement has been brought into another, . . . the jurisdiction of the offense is in any competent court within either jurisdictional territory . . . ."

■ While acknowledging jurisdiction of the robbery counts for the Taco Bell crime would properly be in San Diego County under section 786, because the property was found in this jurisdiction, Campbell and Werner challenge the constitutionality of this section as violative of the Sixth Amendment "right to be tried by an impartial jury comprising a representative cross-section of, and selected from residents of, the judicial district where the crime was committed." (*People* v. *Jones* (1973) 9 Cal.3d 546, 556 [108 Cal.Rptr. 345, 510 P.2d 705], overruled on other grounds in *Hernandez* v. *Municipal Court* (1989) 49 Cal.3d 713, 719 [108 Cal.Rptr. 345, 510 P.2d 705].) In the alternative, they contend the three false imprisonment charges

commited in Temecula are not covered under section 786, are separate crimes, and, therefore, they at least must be reversed. We reject their contentions.

■ Because it is well established an appellate court will affirm a result which is right whether the ground upon which the trial court granted or denied relief was correct or not (*People* v. *Braeseke* (1979) 25 Cal.3d 691, 700 [159 Cal.Rptr. 684, 602 P.2d 384]), at oral argument on this case we requested the parties submit supplemental briefing on the applicability of the general territorial jurisdictional statute, section 781, paying particular attention to whether there were preliminary acts or an uncharged conspiracy involved in San Diego County which would support such jurisdiction in this county. After reviewing the additional briefing in light of the original briefing and oral argument, we conclude the trial court was correct, regardless of its stated reason, in its determination territorial jurisdiction lies in this county.

■ Preliminarily, we note the People correctly point out Campbell and Werner have technically waived their right to raise issues concerning vicinage (see *People* v. *Guzman* (1988) 45 Cal.3d 915, 933-939 [248 Cal.Rptr. 467, 755 P.2d 917]; *People* v. *Remington* (1990) 217 Cal.App.3d 423, 431 [266 Cal.Rptr. 183]) and venue for the Riverside County false imprisonment counts in this case.

■ Territorial jurisdiction is a " 'nonfundamental, waivable aspect of jurisdiction . . .' " (*People* v. *Remington, supra*, 217 Cal.App.3d at pp. 428-429), which may be waived by either a defendant's consent or failure to object. (See *id.* at p. 431.) ■ Further, because the issue of vicinage, the county from which jurors are summoned (*Hernandez* v. *Municipal Court, supra*, 49 Cal.3d at p. 719), has been held to be a "logically distinct concept" from the issue of venue, the place of trial (*People* v. *Guzman, supra*, 45 Cal.3d at p. 934; *People* v. *Bismillah* (1989) 208 Cal.App.3d 80, 87 [256 Cal.Rptr. 25]), it requires a separate objection at trial to preserve issues for appeal.

■ Neither defendant here made an appropriate timely objection to the jury panel in the trial court. (See *People* v. *Jones, supra*, 9 Cal.3d at p. 556, fn. 7, overruled on other grounds in *Hernandez* v. *Municipal Court, supra*, 49 Cal.3d at p. 719.) Nor did they make any Sixth Amendment constitutional challenge or voice any objection to venue on the basis of jurisdiction for the Riverside County false imprisonment counts at the trial court level. Thus, these issues were technically waived.

These waivers, coupled with the conceded fact jurisdiction for the Riverside County robberies was properly in San Diego Superior Court under section 786, fully support the trial court's ruling. However, because a constitutional issue is involved and Campbell and Werner could feasibly claim their respective trial counsel were in some fashion ineffective for not raising these issues, in the interests of justice we address their concerns about territorial jurisdiction and vicinage, which, for all practical purposes, are one and the same in this case.

Our Supreme Court in *People* v. *Douglas* (1990) 50 Cal.3d 468 [268 Cal.Rptr. 126, 788 P.2d 640] recently revisited the issue of territorial jurisdiction based on section 781[5] and reaffirmed its earlier holdings in *People* v. *Powell* (1967) 67 Cal.2d 32 [59 Cal.Rptr. 817, 429 P.2d 137] (*Powell I*) and *People* v. *Abbott* (1956) 47 Cal.2d 362, 370 [303 P.2d 730], finding "the county in which the preliminary arrangements for [a crime are made is] a proper county to prosecute the offense even though the preparatory acts [do] not constitute an essential element of the crime. [Citations.]" (*People* v. *Douglas, supra,* 50 Cal.3d at p. 493.)

In *Douglas,* the defendant was charged with a conspiracy to commit murder, murder and conspiracy to commit prostitution. (*People* v. *Douglas, supra,* 50 Cal.3d at p. 492.) As soon as the conspiracy charges were dropped, he moved to dismiss on grounds the trial court lacked jurisdiction over his case because the murder and prostitution occurred in another county. (*Id.* at p. 493.) Both the municipal and superior courts rejected his arguments. The Supreme Court affirmed, finding the facts of the preliminary arrangements in one county which led to the commission of the offenses in another county were sufficient to confer jurisdiction even though the accusatory pleading no longer charged the defendant with conspiracy. (*Id.* at pp. 493-494.) The court noted that venue depended "upon the acts committed rather than upon the form of the accusatory pleading." (*Id.* at p. 494.)

 In this case, as in *Douglas,* even though the defendants were not charged with conspiracy, there is sufficient evidence of preliminary arrangements in one county which led to the commission of offenses in another county to confer territorial jurisdiction here. From this evidence it can also be inferred the preliminary arrangements made in San Diego were overt acts

---

[5]Section 781 provides: "When a public offense is committed in part in one jurisdictional territory and in part in another, or the acts or effects thereof constituting or requisite to the consummation of the offense occur in two or more jurisdictional territories, the jurisdiction of such offense is in any competent court within either jurisdictional territory."

in furtherance of a conspiracy to rob fast-food restaurants, both in this county and in Riverside County.[6] (See §§ 182, 184.)

Specifically, the record contains evidence from which it can be inferred Campbell and Werner masterminded and made preliminary arrangements in San Diego County for the crimes. Testimony from the major victim in the Cardiff Jack-in-the-Box (San Diego County) robbery, which occurred earlier the same day as the Temecula Taco Bell (Riverside County) robbery, when compared with the testimony of the victims of the Temecula robbery, supports the inference the clothing, masks and gloves used during the two crimes were the same. Because these items, along with property taken from the Cardiff robbery, were in Campbell and Werner's possession before driving to Temecula and still in their possession after returning to San Diego County, it is reasonable to believe Campbell and Werner's acts of arming, obtaining clothing and transportation were overt acts committed in San Diego County in furtherance of a conspiracy to rob fast-food restaurants. It can further be inferred the Temecula robbery was part and parcel of that conspiracy which had its preliminary acts in San Diego county.

Moreover, Campbell and Werner's modus operandi had been established in the Jack-in-the-Box robbery in San Diego County before driving to Temecula later that day—go in at gunpoint, take the money and falsely imprison any employees in the walk-in freezers in order to facilitate obtaining the money and to escape. It is therefore also reasonable to infer the false imprisonments were additional overt acts in the uncharged conspiracy to rob fast-food restaurants and to make a getaway. Because a criminal conspiracy may be prosecuted and tried in any county in which an overt act in furtherance of the conspiracy is done (§ 182), the totality of the preliminary or overt acts committed in San Diego County was sufficient under section 781 to confer territorial jurisdiction in this county for all the crimes which occurred in Riverside County.

■ That the municipal and superior court judges in ruling on Campbell and Werner's motions used the more specific section 786, which refers to theft-related cases, for their decision jurisdiction lies in San Diego County, makes no difference. Since section 786 is not exclusive in cases of theft, section 781 may also properly be applied here to establish territorial jurisdiction. (See *People* v. *Douglas, supra,* 50 Cal.3d at p. 494 and *People* v. *Bismillah, supra,* 208 Cal.App.3d at p. 85.)

---

[6]We take judicial notice Temecula is within 10 miles of the San Diego County line. (Evid. Code, § 452, subd. (h).)

Realistically, because of the closeness of Temecula to San Diego County and the closeness of the fast-food restaurants involved, the Cardiff Jack-in-the-Box being only a 45-minute drive from the Temecula Taco Bell, it is doubtful Campbell and Werner considered whether they were in San Diego or Riverside County when they committed the crimes.

Furthermore, we find no Sixth Amendment vicinage violation. Contrary to Campbell and Werner's assertions "vicinage" is a very restrictive concept mandating jurisdiction only where the crime was committed, our Supreme Court recently stated in *Hernandez* v. *Municipal Court, supra,* 49 Cal.3d at pages 719-729, after examining at length the historical background of that term,

"The impetus for the vicinage requirement and the rationale for its inclusion within the Sixth Amendment do not support a more restrictive definition of vicinage. Jurors are no longer permitted, let alone required, to possess personal knowledge of the crime; our citizens are no longer threatened with transportation across the seas for criminal trials. Transformations in our government as well as in our society make clear that narrowly interpreting the vicinage requirement is no longer warranted." (*Hernandez* v. *Superior Court, supra,* 49 Cal.3d at p. 722.)

Although the court in *Hernandez* acknowledged the right to be tried by a " 'jury of the vicinage' " is an essential element of jury trial defined and preserved by the Sixth Amendment, it pointed out the federal Constitution does not use the term "vicinage." (*Hernandez* v. *Superior Court, supra,* 49 Cal.3d at pp. 720-721.) Rather, it stated, "the 'vicinage' requirement itself ha[s] been replaced by wording that reflected a compromise between broad and narrow definitions of that term, and that left Congress the power to determine the actual size of the 'vicinage' by its creation of judicial districts." (*Ibid.,* quoting from *Williams* v. *Florida* (1970) 399 U.S. 78, 96-100 [26 L.Ed.2d 446, 457-460, 90 S.Ct. 1893].) The court noted federal law has consistently defined "district" for purposes of the Sixth Amendment as "the federal judicial district." (*Id.* at p. 721, citing *Williams* v. *Florida, supra,* 399 U.S. 78, 96-100 [26 L.Ed.2d 446, 457-460].)

The court in *Hernandez,* although acknowledging the implied right of vicinage in the California Constitution (*Hernandez* v. *Municipal Court, supra,* 49 Cal.3d at p. 721), declined to apply a literal interpretation of the Sixth Amendment as such would have little meaning in this state where judicial districts, which bear no resemblance to the federal districts, have been created by our Legislature. (*Id.* at p. 728.) However, the court also rejected the narrow interpretation of vicinage set out in *People* v. *Jones, supra,* 9 Cal.3d at page 556, on which Campbell and Werner rely for their arguments vicinage was violated in this case.

We agree with *People* v. *Bismillah, supra,* 208 Cal.App.3d at pages 87-89, which also discussed the history of the Sixth Amendment vicinage requirement and adopted the reasoning of *People* v. *Powell* (1974) 40 Cal.App.3d 107, 123 [115 Cal.Rptr. 109] (*Powell II*) in rejecting a vicinage challenge.

The court in *Bismillah* concluded, based upon *Powell II*, that "pursuant to section 781, the Legislature has divided the state into 'districts,' permitting trials to take place in any county which forms part of such a district. Further, jurors must be drawn from the county of trial, even if only preliminary acts take place in that county. 'If that means that for Sixth Amendment purposes California interprets the word "crime" as including preliminary acts which satisfy the venue requirement of section 781 of the Penal Code, so be it.' [Citation.]" (*People* v. *Bismillah, supra,* 208 Cal.App.3d at p. 89.)

Here, both sections 781 and 786 are legislative determinations that trial is appropriate in more than one county when certain facts apply; i.e., section 781 allows jurisdiction in any county where acts preliminary or requisite to the consummation of the offense occur and section 786 permits jurisdiction either in the county where property is taken in a theft-related offense or in the county where the property is brought after the offense. Neither section 781 nor section 786 violates the Sixth Amendment concept of vicinage as set out in *Hernandez* ("the boundaries of the vicinage are coterminous with the boundaries of the county"). (*Hernandez* v. *Municipal Court, supra,* 49 Cal.3d at p. 729.) Both sections require at least some act within a county preliminary to or requisite to the offense charged before jurisdiction will attach.

Campbell and Werner's limited interpretation of the Sixth Amendment simply does not conform to the modern realities of American society. In this highly mobile society, we do not think criminals seriously consider what county they are in before committing crimes and how such would affect their trial if they should get caught. ■ As *Bismillah* points out, the jurisdictional statutes are "remedial and, thus, we construe the statute[s] liberally to achieve [their purposes] of expanding criminal jurisdiction beyond rigid common law limits. [Citations.]" (*People* v. *Bismillah, supra,* 208 Cal.App.3d at p. 85.)

■ We conclude the vicinage principles are not offended in this case by drawing jurors only from San Diego County where the preliminary, overt acts occurred and where Campbell and Werner returned after the Riverside County robbery.

II-VI*

. . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante,* page 1432.

DISPOSITION

Campbell's count 11 conviction for possession of a concealed firearm by an ex-felon is reversed.

The superior court is directed to amend Campbell's abstract of judgment to strike the punishment for the count 11 conviction and Werner's abstract of judgment to strike reference to imposition and stay of the firearm enhancement allegation in reference to count 8 (robbery of Walls) and to correctly reflect the true finding of section 12022, subdivision (a) with its stay for count 3 (robbery of Castillejos) instead of a section 12022.5 stay, and to forward both to the proper authorities.

As so modified, the judgments in all other respects are affirmed.

Froehlich, J., and Nares, J., concurred.

Appellants' petition for review by the Supreme Court was denied August 21, 1991.