[No. B082876. Second Dist., Div. Six. Sept. 27, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES LINDSAY MARTIN, Defendant and Appellant.

**COUNSEL**

Maureen DeMaio, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Linda C. Johnson and Brad D. Levenson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**GILBERT, J.**—Penal Code section 790 is a venue statute. It provides that jurisdiction of a criminal action for murder may be in one of three counties: where the fatal injury was inflicted, where the injured party dies, or where the body was found.

Here we hold that the constitutional right of vicinage is satisfied if the trial is held in any of the three counties specified in Penal Code section 790.

Defendant James Lindsay Martin appeals a judgment of conviction of murder with findings of the special circumstances of robbery and kidnapping to commit robbery. (Pen. Code, §§ 187, subd. (a), 190.2, subd. (a)(17).) He was sentenced to life without the possibility of parole. We affirm and conclude Martin received a trial by a jury drawn from the vicinage of his crime.

FACTS

Mrs. Hendrix, a resident of British Columbia, was traveling in her motorhome through Southern California. While she was in Ventura County, Martin kidnapped, then shot and killed her.

Her body was found in a rural area of Santa Barbara County. There was a bullet hole in her head. A police officer opined at trial that the wound was a "near contact" one. Due to the lack of blood and because there were no signs of a struggle at the scene, this officer believed Mrs. Hendrix had not been killed there.

Doctor Robert Failing, the Santa Barbara County forensic pathologist, examined Mrs. Hendrix's body and opined she died from a gunshot that entered her head above her left ear. She also suffered from fresh bruises to her forehead, back left arm and one ankle. Doctor Failing also believed Mrs. Hendrix had been strangled because her neck was bruised. He did not believe the gunshot wound was a contact wound but opined the wound was consistent with a gunshot fired through a towel placed near her head.

At trial, Martin testified that he killed Mrs. Hendrix, but did not intend to do so. He stated he killed her at San Buenaventura State Beach after she struck him and "made [him] real mad."[1] He gave her a "karate chop," and she fell. He pulled out his gun "to force her out of the motor home," but he lost his footing and "the gun just exploded." He realized Mrs. Hendrix was dead but tied her hands because he feared her "coming back to life." He put a bag around her neck and one over her head to contain the hemorrhaging of blood. Martin then drove north to a rural area (in Santa Barbara County) and "dumped the body," after cutting off Mrs. Hendrix's clothing "to expose the body to the elements, and to the animals."

Martin admitted to police officers that he killed Mrs. Hendrix, but gave officers differing accounts of the killing. He admitted to shooting her at San

---

[1]Mrs. Hendrix was sixty-eight years old, five feet eight inches tall and weighed one hundred thirty pounds. Martin was forty years old at the time of trial and was six feet two inches tall.

Buenaventura State Park, in Ventura County. He later drove to Lake Casitas, in Santa Barbara County, to dispose of her body. Martin admitted to a corrections officer at the local jail that "[w]hen [he] pulled the trigger, the weapon didn't fire the first time."

The jury convicted Martin of murder and found that he used a firearm during the offense. (Pen. Code, §§ 187, subd. (a) and 12022.5.) It also found that Martin killed Mrs. Hendrix during a robbery and kidnapping for purposes of robbery. (Pen. Code, § 190.2, subd. (a)(17).)

On appeal, Martin contends his trial by a jury drawn from Santa Barbara County denied him his federal and state constitutional rights to a jury drawn from the vicinage—the neighborhood—in which the crime occurred. Martin argued before trial commenced that a jury drawn from Santa Barbara County violated his constitutional rights of vicinage. The trial judge rejected this argument, relying upon *People* v. *Powell* (1967) 67 Cal.2d 32 [59 Cal.Rptr. 817, 429 P.2d 137] and *People* v. *Powell* (1974) 40 Cal.App.3d 107 [115 Cal.Rptr. 109].

### DISCUSSION

### I.

Martin asserts that his constitutional rights to vicinage require that he receive a trial before a jury drawn from Ventura County because he committed the crime there.

He acknowledges that under Penal Code section 790, Santa Barbara County had venue to prosecute him because he disposed of Mrs. Hendrix's body in Santa Barbara County. Martin points out, however, that venue and vicinage are separate concepts. (*Hernandez* v. *Municipal Court* (1989) 49 Cal.3d 713, 716, fn. 1 [263 Cal.Rptr. 513, 781 P.2d 547].) Venue fixes the place of trial and in state prosecutions, Penal Code section 777 is the basic rule of venue.[2] (49 Cal.3d at p. 716; *People* v. *Guzman* (1988) 45 Cal.3d 915, 934 [248 Cal.Rptr. 467, 755 P.2d 917], disapproved on other grounds by

---

[2]Penal Code section 777 provides: "Every person is liable to punishment by the laws of this State, for a public offense committed by him therein, except where it is by law cognizable exclusively in the courts of the United States; and except as otherwise provided by law the jurisdiction of every public offense is in any competent court within the jurisdictional territory of which it is committed."

Penal Code 790 provides: "The jurisdiction of a criminal action for murder or manslaughter is in the county where the fatal injury was inflicted or in the county in which the party injured died or in the county in which his body was found. . . . When the fatal injury is inflicted and the injured person died or his body was found within five hundred yards of the boundary of two or more counties, jurisdiction is in either county."

*People* v. *Marshall* (1990) 50 Cal.3d 907, 933, fn. 4 [269 Cal.Rptr. 269, 790 P.2d 676].) Martin adds that a venue statute may not abridge a defendant's right to a jury of the vicinage. (*People* v. *Powell* (1891) 87 Cal. 348, 360 [25 P. 481]; *People* v. *Barney* (1983) 143 Cal.App.3d 490, 493-494 [192 Cal.Rptr. 172].)

## II.

The constitutional right of vicinage is a geographic requirement. (*Hernandez* v. *Municipal Court, supra,* 49 Cal.3d 713, 716, fn. 1.) "It is the right of a criminal defendant to be tried by a jury drawn from the area in which the crime occurred. [Citation.]" (*Ibid.*) This right originated from the expectation in English judicial practice that jurors would pass judgment based upon their personal knowledge of the crime. (*Id.,* at pp. 719-720.) Although jurors now render a verdict based upon evidence at trial, they are still drawn from the vicinage of the crime. (*Id.,* at p. 720.)

The vicinage requirement also protects the right of the offended community to pass judgment in criminal matters. (*Hernandez* v. *Municipal Court, supra,* 49 Cal.3d 713, 716, fn. 1.) " 'Trials in the community of local criminal matters, particularly shocking crimes, provide a substitute for the natural human reactions of outrage, protest and some form of vengeful self-help.' (Murphy, *Revising Domestic Extradition Law* (1983) 131 U.Pa.L.Rev. 1063, 1087.)" (*People* v. *Guzman, supra,* 45 Cal.3d 915, 937.)

Vicinage is guaranteed by both the federal and state Constitutions. The Sixth Amendment to the United States Constitution provides in part: " 'In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law. . . .' " (*Hernandez* v. *Municipal* Court, *supra,* 49 Cal.3d 713, 721.) The Fourteenth Amendment of the federal Constitution guarantees this right in state prosecutions. (*Ibid.*) Article I, section 16 of the California Constitution (formerly art. I, § 7, repealed in 1974) also has been interpreted to contain an implied right to a jury selected from the vicinage. (49 Cal.3d at p. 721.)

Our Supreme Court has broadly interpreted the geographical area of vicinage due to changes in our government and society since colonial times. (*Hernandez* v. *Municipal Court, supra,* 49 Cal.3d 713, 722.) Jurors are no longer required or permitted to have personal knowledge of a crime and England does not threaten our citizenry with treason trials held there. (*Ibid.*) In California state prosecutions, the boundaries of the vicinage are

coterminous with the boundaries of the county in which the crime was committed. (*People* v. *Danielson* (1992) 3 Cal.4th 691, 704 [13 Cal.Rptr.2d 1, 838 P.2d 729]; *Hernandez* v. *Municipal Court, supra,* 49 Cal.3d at p. 717.)

## III.

*People* v. *Campbell* (1991) 230 Cal.App.3d 1432 [281 Cal.Rptr. 870], *People* v. *Bismillah* (1989) 208 Cal.App.3d 80 [256 Cal.Rptr. 25], and *People* v. *Powell, supra,* 40 Cal.App.3d 107, govern the vicinage question presented here. These decisions concern the commission of acts preliminary to a crime in one county and the commission of the crime in a second county. *Campbell, Bismillah,* and *Powell* held that constitutional rights of vicinage were satisfied by trial in the first county. Venue was proper in the first county, pursuant to Penal Code section 781.[3] Those counties where venue lay under the venue statutes constituted a "district" for vicinage requirements. (*People* v. *Campbell, supra,* 230 Cal.App.3d 1432, 1446-1447; *People* v. *Bismillah, supra,* 208 Cal.App.3d 80, 88-89; *People* v. *Powell, supra,* 40 Cal.App.3d 107, 123.)

Thus, *People* v. *Powell, supra,* 40 Cal.App.3d 107, the seminal case concerning vicinage and Penal Code section 781, concerned the kidnapping of two police officers in Los Angeles County and the murder of one in Kern County. *Powell* held that trial in Los Angeles County satisfied defendants' rights of vicinage. (40 Cal.App.3d at pp. 120-123.) The court concluded that pursuant to section 781, the Legislature had divided the state into "districts," permitting trials to occur in any county forming a part of such district. Moreover, jurors must be drawn from the county of trial, even if only preliminary acts occurred there. "If that means that for Sixth Amendment purposes California interprets the word 'crime' as including preliminary acts which satisfy the venue requirement of section 781 of the Penal Code, so be it." (40 Cal.App.3d at p. 123.)

Martin argues that *Powell, Bismillah,* and *Campbell* are "intellectually dishonest" because those decisions diminish the constitutional right of vicinage and impermissibly relate it to the venue statutes. (See venue statutes found at Pen. Code, §§ 777-795.) These decisions may more broadly interpret vicinage than Martin prefers, but our Supreme Court has denied review to each decision. Moreover, our Supreme Court has broadened the geographical area of vicinage, noting that "[t]ransformations in our government as

---

[3]Penal Code section 781 provides: "When a public offense is committed in part in one jurisdictional territory and in part in another, or the acts or effects thereof constituting or requisite to the consummation of the offense occur in two or more jurisdictional territories, the jurisdiction of such offense is in any competent court within either jurisdictional territory."

well as in our society make clear that narrowly interpreting the vicinage requirement is no longer warranted." (*Hernandez* v. *Municipal Court, supra,* 49 Cal.3d 713, 722.)

Here Penal Code section 790 provides for venue in murder prosecutions "in the county in which [the victim's] body was found . . . ." Applying the reasoning of *People* v. *Powell, supra,* 40 Cal.App.3d 107, 123, Penal Code section 790 creates a "district" of counties for vicinage purposes.

Martin's authorities are distinguishable. Unlike *People* v. *Bradford* (1976) 17 Cal.3d 8 [130 Cal.Rptr. 129, 549 P.2d 1225], the venue statute here expressly covers Martin's acts in Santa Barbara County. Also, unlike *People* v. *Barney, supra,* 143 Cal.App.3d 490, Martin was not merely apprehended in Santa Barbara County. He performed an act in Santa Barbara County, disposed of a body, to avoid detection of his crime. (*People* v. *Bismillah, supra,* 208 Cal.App.3d 80, 89.)

Vicinage also protects the right of the offended community to pass judgment in criminal prosecutions. (*People* v. *Tamble* (1992) 5 Cal.App.4th 815, 820 [7 Cal.Rptr.2d 446]; *People* v. *Powell, supra,* 40 Cal.App.3d 107, 122, fn. 6.) Trial in Santa Barbara County vindicates that community's right to judge Martin's callous act of "dump[ing]" Mrs. Hendrix's body there after removing her clothing "to expose the body to the elements and to the animals."

Accordingly, the judgment is affirmed.

Stone (S. J.), P. J., and Yegan, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 4, 1996.